Angela BARRETT, a minor child, through her guardian Lucila Hollander, Individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

Emmett ROBERTS, Individually and in his capacity as Secretary of the Department of Health and Rehabilitative Services, et al., etc., Defendants-Appellees.

No. 75–2997.

United States Court of Appeals,
Fifth Circuit.

May 2, 1977.

Suanne Pierce, Michael R. Masinter, Florida Rural Legal Services, Inc., Homestead, Fla., for plaintiffs-appellants.

Chester G. Senf, Eve Dunkerley Peck, Division of Family Services, Legal Dept., Jacksonville, Fla., for defendants-appellees.

Before GOLDBERG and HILL, Circuit Judges, and KERR *, District Judge.

JAMES C. HILL, Circuit Judge:

The appellant has been a recipient of Aid to Families with Dependent Children ("AFDC"), since October, 1973.[1] Although the appellant normally had received her monthly AFDC benefit check on or about the first day of each month, she received notice on May 19, 1975, advising her that the benefits would be terminated at the end of May, unless she requested what is known as an administrative fair hearing, prior to May 29, 1975. The appellant requested such a hearing on or about May 29, 1975, and she was advised that her June check would arrive later in the month. On June 6, 1975, appellant brought this action, seeking declaratory and injunctive relief and alleging that the delay in the receipt of her benefits constituted a violation of her Fourteenth amendment rights and her rights under Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.* On June 17, 1975, the District Court for the Southern District of Florida denied the requested in-

---

* Senior District Judge of the District of Wyoming sitting by designation.

1. Angela Barrett is a six year old child whose guardian and mother, Lucila Hollander, brought this action on her behalf.

junction and entered a judgment dismissing the complaint with prejudice. As of June 17, 1975, the plaintiff had not yet received her June check.

## I. *The Facts.*

The delay experienced by the plaintiff in receiving her check resulted from a procedure followed by the appellees in reviewing, on a semi-annual basis, the eligibility of each AFDC recipient. This review program is intended to prevent large numbers of persons from receiving checks to which they are not entitled and to improve the administrative efficiency of the distribution process. The savings occasioned by the program allegedly involve large sums of money each year.[2]

The procedure followed by the appellees may be described as follows. When an AFDC caseworker determines that a recipient is no longer eligible for benefits, the worker sends a "Notice of Case Action" so advising the recipient and further advising the recipient that if a request for hearing is made within ten days, the AFDC benefits will be continued until a decision as to eligibility is made by a hearing officer.[3] At the same time the notice is sent, the caseworker completes what is called an Assistance Payments Record Form ("APR"), which removes the recipient's grant from the "regular payroll." If the recipient files a timely request for a fair hearing, the caseworker then completes and sends another APR form, placing the recipient upon a "supplemental payroll," and thereby resuming the benefits of the recipient. The date of this action, which is based upon the date when the hearing is requested, determines the supplemental payroll upon which the recipient is placed and, depending on the date of the supplemental payroll, the next month's check to the recipient will

arrive from 8 to 20 days after the first of the month. As a result, the recipient's check for the month subsequent to the Notice of Case Action will be delayed even though a hearing is requested and the recipient's eligibility might later be established. The principal question presented in this appeal is whether the delay caused by this procedure is violative of the recipient's rights.

A close examination of the appellees' payroll procedure is essential to an understanding of this case. The appellees explain that checks are sent to recipients only after a "payroll" is prepared. The payroll is actually a computer tape which contains essential information about the payee, such as the payee's name, the amount of the check, the address and the date. After a payroll is prepared it is given to the State Comptroller, who is responsible for issuing the checks. Although this procedure normally takes a maximum of ten days, there is a cut-off date for each payroll date. This is usually the day prior to the payroll date, as that is the last day on which information can be received in time to process it for inclusion in the payroll.

The appellees use three different types of payrolls. The first of these is called the "new case payroll," which as its name implies, is used to expedite the mailing of checks to new applicants who are determined to be eligible for welfare assistance. There are four of these payrolls prepared each month.

There is also what is known as a "regular payroll," to which a recipient appearing on the new case payroll is automatically transferred for the next and each subsequent month. This payroll, which accounts for 75,000 checks each month, is prepared on approximately the 19th of each month, with

---

2. Although there was testimony before the district court indicating the savings estimated by the appellees, such testimony was stricken as hearsay.

3. When a recipient's case is due for redetermination of eligibility (each six months) the caseworker sends a notice to the recipient that a review is due and sets an appointment for a

redetermination interview within ten days. A Notice of Case Action is sent to any recipient who fails to keep the appointment or fails to respond to the notice. In addition, if at any stage of the review process the caseworker determines that a recipient is no longer eligible for AFDC benefits, the worker will prepare and send a Notice of Case Action to the recipient.

a closing date of the 18th. Normally, recipients on the regular payroll will receive their checks on or about the first day of each month.

The appellees also prepare three "supplemental payrolls" each month, approximately 10 days apart (on the 10th, 19th, and 28th of each month). Supplemental payroll checks are mailed approximately ten days after each payroll is prepared. The supplemental payroll is used to perform many functions, such as sending payments of grants which are increased after the regular payroll has been printed; reissuing checks which have been lost or stolen or in which the name of the payee has been changed; paying retroactive benefits; issuing checks where a regular payroll check has been inadvertently omitted or not processed on the regular payroll for technical reasons; and, as in this case, providing for the continuation of benefits when a recipient files a timely appeal to a proposed termination. Thus, the date on which a request for a fair hearing is received determines which supplemental payroll is used and, as a result, the length of the delay to the recipient (8 to 20 days).

## II. *The Denial of Injunctive Relief.*

In the district court, appellant sought a preliminary injunction on her behalf, and on behalf of all other similarly situated AFDC recipients, against the eligibility review procedures of the appellees. Since the cause had not been certified as a class action before the district court dismissed it with prejudice, the appellant is in an anomalous situation on appeal. Although her check was delayed during the month of June, 1975, the record does not indicate that her checks for later months were also delayed.

Since the appellant is no longer experiencing any delay in the receipt of her checks, the appellees contend that this action is moot. Aside from the class action allegations, which are not before us in this appeal, the appellant is essentially asking this court to declare that something which has already happened ought not to have happened. As a result, the appellees contend that the appellant no longer has a stake in this litigation. They argue that the requested injunction would have absolutely no effect on the appellant since she is already receiving her checks on the first of each month.

■ Given the brief interval of time during which the appellant's injury is alleged to have occurred, however, we conclude that this appeal is not moot. The issue presented is a classical example of a question which is "capable of repetition, yet evading review." *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). We proceed, therefore, to review the conclusions of the district court.

■ In order to obtain preliminary injunctive relief, a litigant is required to demonstrate: (a) a substantial likelihood of success on the merits; (b) a substantial threat that the plaintiff will suffer irreparable harm unless the preliminary injunction is granted; (c) that the threatened injury to the plaintiff if the injunctive relief is denied outweighs the possible harm to the defendants if the relief is granted; and (d) that the issuance of injunctive relief will serve the public interest. *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974); *Blackshear Residence Organization v. Romney*, 472 F.2d 1197 (5th Cir. 1973); *Allison v. Froehlke*, 470 F.2d 1123 (5th Cir. 1972). The district court held that the appellant had not met these four prerequisites for preliminary injunctive relief. Based on the evidence which was before the court, we affirm the denial of that relief.

### A. *Appellant's Fourteenth Amendment Due Process Claim.*

The plaintiff contends that this case is governed by *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which held that "when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process." Relying on another

Supreme Court decision, *Daniel v. Goliday*, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970), in which *Goldberg* was explicated further, appellant contends that a pre-termination hearing is required with respect to a suspension as well as a termination of AFDC benefits. In *Daniel*, the Court stated that "[t]his Court's . . . decision[] in [*Goldberg*] . . . dealt only with termination and *suspension*, not reduction, of benefits." (emphasis added).

The appellees contend that there has been neither a termination, reduction nor suspension of benefits without a prior hearing. They contend that merely changing the date of receipt of the welfare check by several days is permissible under *Goldberg*. They point out that a recipient who submits a request for hearing remains eligible for all benefits for each entire month and receives a check on approximately the first day of each month thereafter,[4] with the exception of the month immediately subsequent to the "Notice of Case Action." That month, which is the only one in which a delay occurs, is the only month in question in this lawsuit.

The appellees contend further that their review procedure is consistent with the Social Security Act of 1935, which provides in section 602(a)(10) that "aid . . . be furnished with *reasonable* promptness to all eligible [recipients]." (emphasis added). Given the necessity of the review procedure and the administrative simplicity of the system now used, appellees contend that their procedure is "reasonable" under the circumstances. In addition, the appellees contend that their procedures are necessary to limit the payments made to ineligible persons, as required by regulations of the Department of Health, Education and Welfare ("HEW").

We will first consider the claim of denial of due process under *Goldberg*. The appellant contends that *Goldberg* establishes the right of an eligible welfare recipient to receive benefits without interruption or de-lay. Indeed, a literal reading of certain passages contained in *Goldberg* lend support to this argument:

> The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination evidentiary hearings are indispensable to that end. 397 U.S. at 265, 90 S.Ct. at 1019.

\* \* \* \* \* \*

> . . . the very provision for a post-termination evidentiary hearing in New York's Home Relief program is itself cogent evidence that the State recognizes the primacy of the public interest in correct eligibility determinations and therefore in the provision of procedural safeguards. *Thus, the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens.* 397 U.S. at 266, 90 S.Ct. at 1019. (emphasis supplied).

These statements, however, must be read in the factual context of the *Goldberg* decision. The New York State procedures there in question permitted termination of a recipient's benefits without a prior hearing. Furthermore, when a recipient's eligibility was challenged, the resulting delay produced a much more severe impact on the recipient than the one time delay of eight to twenty days which is caused by the appellees' procedures. Unlike recipients such as the appellant, who are subject to Florida's AFDC procedures, New York recipients could not have their payments reinstated, even on a delayed basis, simply by requesting an administrative hearing. Payments to a recipient whose eligibility was being challenged would be terminated or suspended until the requested hearing was actually conducted and the recipient's eligibility was reestablished.

---

4. The recipient, of course, ceases receiving benefit checks if, as a result of the fair hearing, ineligibility is established.

To the extent that *Goldberg* might suggest a requirement of uninterrupted benefits, therefore, the "interruption" referred to was more severe, both in terms of finality and duration,[5] than the one time eight to twenty days hiatus here under review. The court in *Goldberg* confronted an egregious deprivation of benefits which a recipient could overcome only by a lengthy post-termination procedure.[6] The procedures of the appellees, however, enable a recipient to get the challenged benefits reinstated, albeit on a delayed basis, simply by requesting a hearing. Based on these factual distinctions alone, the district judge might well have found considerable doubt that appellant would succeed on the merits of her claim under *Goldberg*.

■ The cloud of uncertainty looming over appellant's *Goldberg* claim becomes even more threatening when the governmental interests of the appellees are taken into consideration. Appellees argue that a number of countervailing governmental and public interests explain and justify the delay caused in payment of benefits to a recipient, such as the appellant, whose eligibility is challenged. The necessity of balancing the governmental interests of the

appellees with the injury or loss of the appellant is manifest from the following statement in *Goldberg*:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 71 S.Ct. 624, [95 L.Ed. 817] (1951) (Frankfurter, J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. Accordingly, as we said in *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–1749, [6 L.Ed.2d 1230] (1961), 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' See also *Hannah v. Larche*, 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 1513, [4 L.Ed.2d 1307] (1960).

397 U.S. at 262–63, 90 S.Ct. at 1017–1018.

In *Goldberg*, the Supreme Court considered fiscal and administrative justifications for

---

5. That the delay experienced by New York recipients was much longer than eight to twenty days is apparent from the following description of the State's post-termination "fair hearing" procedures:

> In both AFDC and Home Relief the "fair hearing" must be held within 10 working days of the request, § 84.6, with decision within 12 working days thereafter, § 84.15. It was conceded in oral argument that these time limits are not in fact observed. 397 U.S. at 260, n.5, 90 S.Ct. at 1016, n.5.

Moreover, the ten and twelve day periods referred to above do not include the period of time permitted for filing the request or, more importantly, the period required for actually reinstating payments to a recipient whose eligibility is reestablished.

6. This case is likewise distinguishable from *Burlingame v. Schimdt*, 368 F.Supp. 429 (E.D. Wis.1973), where the Milwaukee County department of public welfare was enjoined from its practice of terminating, reducing or suspending benefits to certain recipients who had requested a hearing challenging the proposed action. The department followed a policy of

implementing its proposed change in welfare benefits, pending a hearing on its action, until its supervisory agency, the Wisconsin department of health and social services, ordered a continuation of the payments at the old level. The latter department, however, would order a continuation of payments only if the hearing request presented a question of fact or judgment, as opposed to a question of policy or law. *See* 45 C.F.R. § 205.10(a)(6)(i). Recognizing that HEW regulations permitted use of the fact-law distinction for determining whether benefits should be reinstated after a hearing, the court found that such a distinction was improper when a request for hearing had been made but was pending. The court concluded that this procedure violated the due process clause of the Fourteenth Amendment, as well as the Social Security Act and the regulations promulgated thereunder. Unlike the defendants in *Burlingame*, the appellees in this case automatically reinstate the benefits of all recipients who request a hearing, irrespective of whether the request raises issues which are factual, rather than legal, in nature.

the complete absence of pre-termination hearing procedures and concluded that "these governmental interests are not overriding in the welfare context." 397 U.S. at 266, 90 S.Ct. at 1019. Our determination that appellees' procedures are less severe than the New York procedures condemned in *Goldberg*, however, places these interests in a new light. They are not "overriding," but they are relevant.

The governmental interests and the interests of the AFDC recipients are best brought into focus by considering alternatives to the present system. During the hearing on this matter in district court, the appellant suggested adoption of an alternative payroll procedure designed to alleviate the type of delay at issue in this case. The appellant suggested that a recipient's name should remain on the regular payroll until after the date for a timely request for a hearing had expired. At that point, the name of each recipient who had not requested a hearing could be dropped from the regular payroll. The appellees, however, respond that the suggested solution is simplistic, uneconomical and impractical. They contend that this procedure would result in increased administrative costs, large payments to ineligible persons and undue hardship on all other recipients.

If this procedure were followed, the recipients who failed to request a hearing would be terminated after expiration of the ten day period for requesting a hearing. The result would be a mixed blessing. Although recipients requesting a hearing would experience no delay in receiving their checks for the month following the "Notice of Case Action," a great number of recipients (98.4 percent of those notified) would continue to receive a check to which they were not entitled for a period of thirty to forty days.

The appellees contend further that the appellant's proposal would increase administrative burdens because it would require

duplicate handling for over 4,000 case records per month. Each month there are approximately 4,100 Notices of Case Action to terminate AFDC benefits. Although the caseworker prepares an APR to terminate the welfare payment to all of the recipients involved, only 75 of them can be expected to request a hearing each month. Under the present system, the caseworkers are required to rehandle only these 75, out of the total of 4,100 case files, by completing an APR to place the recipient on a supplemental payroll.

■ Appellant's proposal would require the caseworker to wait until the ten day period had passed and then to terminate the 4,000 cases in which no request for hearing was received. Appellees contend this would be a completely unnecessary duplication of effort which would result in increased administrative costs. Of more concern to the appellees is the prospect of large payments to ineligible persons. When the final date for making a timely request for hearing falls on or after the payroll cutoff date, it would be too late to remove the names of these recipients from the payroll. Therefore, according to the appellees, 98.4 percent of the 4,100 recipients who do not request a fair hearing, and who are ineligible for benefits, would receive a check. The appellees also contend that such a large distribution of funds to ineligible persons would exceed the tolerance or percentage of "ineligibles" allowed by the Department of Health, Education and Welfare. If the tolerances are exceeded, certain percentages of federal funds are withheld depending upon the percentage of ineligibles receiving payment. See 45 C.F.R. § 205.40. In short, the appellees contend that the payment of large sums each month to ineligible persons is unconscionable, particularly when it can be prevented in large part by changing the payroll dates of only 75 persons for one month.[7]

7. The appellees respond that an HEW regulation, 45 C.F.R. § 205.10(b)(1), authorizes and requires federal reimbursement to the state for payments made to recipients between notification and expiration of the timely appeal period.

We find it unnecessary to decide whether such payments affect the state's "error rate" for purposes of determining the amount of federal funding to which a state is entitled. Since payments to ineligible person often cannot be

The appellees likewise disapprove of another alternative procedure suggested by the appellant. This proposal would require the appellees to withhold the mailing of the regular payroll for several days after the first of the month, then to remove manually all checks for persons whose timely request for hearing had expired on or before the last day of the preceding month and who had not requested a fair hearing. The appellees contend that this procedure would require manual sorting of over 75,000 checks and the manual removal of 4,000 checks, which would take several days.

 After considering the delay to the appellant and the countervailing governmental interests of the appellees, the district court concluded:

> . . . that the procedures being utilized by the Department of Health and Rehabilitative Services, Division of Family Services, wherein for practical reasons in dealing with thousands of recipients of benefits, the Department must notify the computer processing section of the termination when the Notice is sent, does not violate the Fourteenth Amendment to the Constitution of the United States [; and] . . . that there is a valid and sound basis for the utilization of the procedures which have been implemented by the State of Florida, and in fact, finds that they are, from the testimony received this date, commendable. To do otherwise would, without regard to any figures which have been furnished here, result in substantial overpayments to persons who are not otherwise entitled to the receipt of benefits.

In light of the factual distinctions between this case and *Goldberg*, as well as the important governmental interests which the appellees are striving to protect, we affirm the district court's conclusion that the appellant failed to show a likelihood of success on the merits of her Fourteenth amendment due process claim. As a result, we reject appellant's contention that she has

suffered irreparable harm as a matter of law.

**B.** *Appellant's Statutory and Regulatory Claims.*

Since the only remaining basis for appellant's allegation of irreparable harm is statutory, we next consider appellant's argument that appellees' procedures violated the Social Security Act of 1935 and the regulations promulgated thereunder. Section 602(a)(10) of the Act requires that: "aid . . . be furnished with *reasonable promptness.*" (emphasis supplied). The appellees argue that the term "reasonable" indicates a Congressional intent to allow some latitude in the enforcement of the statute. Promptness, they contend, must be tempered by the practicalities of the state's obligations to the public interest and to other AFDC recipients.

The appellant takes a different view of section 602(a)(10). Relying on *Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972), she contends that the "reasonable promptness" language in the section prohibits the appellees from delaying her check for administrative reasons. With respect to section 602(a)(10), the Supreme Court in *Jefferson* made the following statement:

> The statute was intended to prevent the States from denying benefits, even temporarily, to a person who has been found fully qualified for aid. See H.R.Rep.No. 1300, 81st Cong., 1st Sess., 48, 148 (1949); 95 Cong.Rec. 13934 (remarks of Rep. Forand). Section 402(a)(10) also prohibits a State from creating certain exceptions to standards specifically enunciated in the federal Act. See, e. g., *Townsend v. Swank*, 404 U.S. 282, 92 S.Ct. 502, [30 L.Ed.2d 448] (1971). It does not, however, enact by implication a generalized federal criterion to which States must adhere in their computation of standards of need, income, and benefits.
>
> 406 U.S. at 545, 92 S.Ct. at 1731 (footnote omitted).

---

recouped, the appellees have a legitimate governmental interest in preventing such payments, irrespective of whether the ultimate

cost is borne by the federal or the state government.

The *Jefferson* case, however, did not raise a question of delay in receipt of benefits. Rather, that decision concerned the validity of a state system for reducing benefits when the recipient also had outside income. Although the Supreme Court specifically rejected the argument that section 602(a)(10) provided a criterion for computation of standards of need, income and benefits, the court did not interpret the term "reasonable promptness."

■ The question of promptness has usually been presented in connection with the initiation of benefits to eligible recipients. *See e. g., Like v. Carter*, 448 F.2d 798 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972). Yet, the parties in the instant case have not cited, and our research has not revealed, any decision which interprets the term "reasonable promptness" in the context suggested by the appellees.[8] As a result, we must determine whether the delay in the case at bar was reasonable. In view of the competing objectives which the state is attempting to meet in its eligibility review process, we affirm the district court's conclusion that a one time delay of eight to twenty days was not so unreasonable as to require injunctive relief.

■ In addition, we are not persuaded that HEW's regulations require a contrary result. Appellant relies on 45 C.F.R. § 205.-10(a)(6), which provides in pertinent part as follows:

> If the recipient requests a hearing within the timely notice period:
>
> (i) Assistance shall not be suspended, reduced, discontinued or terminated, . . until a decision is rendered after a hearing . . .

Recognizing that this regulation was promulgated in direct response to the *Goldberg* decision,[9] appellant argues that her benefits have been "terminated, discontinued or suspended" in violation of the regulation. Based on our conclusion that the interruption of benefits addressed in *Goldberg* is wholly unlike the delay at issue here, we cannot agree. The regulation paraphrases the requirements of the *Goldberg* decision and cannot properly be interpreted to expand its requirements. Moreover, there is no indication that HEW intended to mandate to the states any guidelines concerning timeliness of payments. Thus, we conclude that neither the Social Security Act nor the regulations provided a basis for the injunctive relief requested by appellant.

### III. *Dismissal with Prejudice.*

■ The appellant contends that the district judge improperly adjudicated the merits of her case without providing adequate notice that trial of the merits would be advanced and consolidated as provided in Rule 65(a)(2), F.R.Civ.Proc.[10] Appellant

---

8. Perhaps the most helpful case concerning "reasonable promptness" is *Cornelius v. Minter*, 395 F.Supp. 616 (D.Mass.1974) where the court held that delays of two to six months in the provision of emergency, financial and supportive assistance were unreasonable. That decision supports appellant's position, in that it applied the requirement of promptness not only to the initiation of AFDC benefits, as in *Like, supra*, but also to the continuing services available to welfare recipients. *Cornelius* is not instructive, however, as to the question whether a delay of eight to twenty days is "reasonable" within the meaning of section 602(a)(10). *But cf. Copeland v. Saucier*, 475 F.2d 1127 (5th Cir. 1973) (average delay, in replacing lost or stolen welfare checks, of 15 days when checks had not been cashed and 45 days when the checks had been cashed was not unreasonable).

9. 45 C.F.R. § 205.10(a)(1) states that ". . . hearings shall meet the due process standards set forth in the U. S. Supreme Court decision in *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970) . . ..

10. Rule 65(a)(2) states as follows:

(2) *Consolidation of Hearing With Trial on Merits.* Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. Even when this consolidation is not ordered, any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial. This subdivision (a)(2) shall be so construed and applied as to save to the parties any rights they may have to trial by jury.

contends, and the record shows, that the district court gave no indication, until the conclusion of the hearing on preliminary injunctive relief, of its intention to adjudicate the merits of appellant's claim without further briefing or argument. Appellant contends that she was unable to introduce testimony and prepare briefs on issues such as the chilling effect of appellees' procedure on the filing of welfare appeals, the "brutal deprivations" caused by the procedure, the cost to the State of the present procedure, and the possibility and cost of alternative procedures.

Of these issues, perhaps the most important to this case is the consideration of alternatives. Since we conclude that this aspect of the case received insufficient attention in the district court, we vacate the order of dismissal with prejudice and remand. All of the parties involved in this matter have at least two common objectives—maximizing the promptness of payments to eligible persons and minimizing the number of ineligible persons who receive payments. To the greatest extent technically possible, the appellees attempt to prevent any delays in disbursement of benefits to eligible recipients. The appellant, likewise, urges the ultimate degree of promptness, but does not advocate the payment of any benefits to persons who are not eligible. The district court, undoubtedly, would encourage the appellees to meet both of these competing goals to the maximum extent practicable. If, under the supervision of the district court, the combined energies of the parties can be directed toward these goals, an improved system may emerge as the ultimate product.

Our holding that the present system should not have been enjoined on Constitutional or statutory grounds does not mean that the State's procedures are beyond improvement. We daresay that today's procedures provide a degree of accuracy and promptness which could not have been achieved even a decade ago. Yet there may lie in the complexities of the computer a technical capability which, if applied to the problem under review, would so simplify and improve the appellees' procedures that the court and the administrators of the State program would be astounded.

Although this court has no computer expertise, we can conceive of alternatives which, if technically feasible, might alleviate, if not solve, the problem of delays. For example, perhaps the computer imput documents known as APR's could be coded so that a recipient's termination from the regular payroll could be nullified if a request for hearing were made before the day on which checks for that regular payroll would be printed. If such a procedure could be followed, the State could neutralize each APR which otherwise would have terminated the grant to a recipient who had requested a hearing. Perhaps the delay involved in transferring a recipient to the supplemental payroll could thereby be avoided.

Since the record indicates that no fresh technical expertise was made available to the court or to the parties in connection with the hearing on injunctive relief, we remand for further consideration of alternatives and possible improvements to the appellees' procedures. This case is receiving ample attention from the realm of the law; it must now be remanded for further consideration in the lexicon of the computer.

Therefore, we affirm the district court's denial of injunctive relief, vacate the order dismissing the cause with prejudice and remand for further consideration of the merits of appellant's claim that an improved or alternative procedure might be devised. In this regard, we commend to the district court's consideration the possible appointment of an expert witness or witnesses pursuant to Fed.R.Evid. 706.

AFFIRMED in part, VACATED in part, and REMANDED.