**WESLEY–JESSEN, INC., a Delaware Corporation, Plaintiff,**

v.

**Charles R. ARMENTO, Defendant.**

**Civ. A. No. C81–1158A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 14, 1981.

William A. Clineburg, Jr., L. Joseph Loveland and Dan L. Heller, King & Spalding, Atlanta, Ga., for plaintiff.

Eugene Zimmer, Jones, Thomas & Askew, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff seeks injunctive relief and damages against defendant, a former employee, for violation of various clauses of the defendant's employment contract with the

plaintiff. The complaint sets forth three claims: that the defendant breached a covenant of non-competition; that after his termination the defendant retained confidential business records that were the plaintiff's property; and that the defendant breached, or would breach an agreement not to disclose confidential business information of the plaintiff. The defendant counterclaimed for monies he claimed the plaintiff owed him at the time of the termination of his employment relationship with the plaintiff.

Jurisdiction is predicated on diversity of citizenship, 28 U.S.C. § 1332 (1970).

On June 16, 1981, the court granted the plaintiff's request for a temporary restraining order. A hearing on plaintiff's motion for a preliminary injunction was held on June 26, at which time the court allowed the temporary restraining order to expire. For the reasons set forth below, preliminary injunctive relief is DENIED on all claims.

The standards for granting a preliminary injunction are well settled: The granting or denying of a preliminary injunction rests within the sound discretion of the district court. *Clements Wire & Mfg. Co. v. N.L.R.B.*, 589 F.2d 894 (5th Cir. 1979); *Johnson v. Radford*, 449 F.2d 115 (5th Cir. 1971).

However, this discretion must be exercised in light of the four well established prerequisites for issuance of a preliminary injunction: (1) a substantial likelihood the plaintiff will prevail on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the plaintiff must outweigh the threatened harm an injunction may cause the defendant and; (4) granting the injunction will not disserve the public interest. *Clements Wire & Mfg. Co. v. N.L.R.B.*, 589 F.2d 894 (5th Cir. 1979); *Barrett v. Roberts*, 551 F.2d 662 (5th Cir. 1977).

The burden of proof on each element rests with the movant, although the quantum of evidence necessary to carry that burden can fluctuate from element to element. On each of the prerequisite elements the sufficiency of the evidence presented is balanced by the court on a sliding scale: a much stronger showing on one or more of the necessary elements lessens the amount of proof required for the remaining elements. *Texas v. Seatrain International, S.A.*, 518 F.2d 175 (5th Cir. 1975); *Siff v. State Democratic Executive Committee*, 500 F.2d 1307 (5th Cir. 1974). *See, Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974).

The following constitutes the court's findings of fact and conclusions of law on plaintiff's motions for preliminary injunctive relief. Rule 52, Fed.R.Civ.P.

## FACTS

The plaintiff, a manufacturer of daily wear contact lenses, hired the defendant as a salesman in April, 1979. The defendant had prior experience as an eyeglasses salesman. However, when the defendant was hired, the plaintiff provided about a month of training and instruction on contact lens mechanics and the plaintiff's own business methods.

The defendant resigned his position on April 13, 1981, effective April 20, 1981. By April 20th, the defendant was already at work as a salesman for Cooper Vision, Inc., a maker of extended wear contact lenses. Daily wear and extended wear contact lenses are competing products in the eyecare industry. All the defendant's sales territory for Cooper Vision is territory he had formerly covered for the plaintiff, including the City of Atlanta and environs. The defendant has been actively and successfully covering this territory for his new employer.

At the time he tendered his resignation the defendant had possession of a car, a sales manual, a movie projector and promotional movies, promotional brochures, and at least four different types of computer generated customer lists and sales reports covering various months. All these items were property of the plaintiff. The car, the movie projector, and some of the other items were returned in April shortly after defendant's resignation. Other items were

returned only after the present litigation began. Some items, including customer lists and credit information on each customer were never returned. The defendant testified that the unreturned material was destroyed or thrown out.

Each of the plaintiff's three claims for injunctive relief is separately discussed. Although all four prerequisites for a preliminary injunction were considered, in this discussion the court focuses primarily on the plaintiff's likelihood of prevailing on the merits.

## COVENANT NOT TO COMPETE

The central issue for both parties in this case is whether the defendant will be found in violation of his agreement not to compete. In essence, the non-competition covenant calls for a 300 day period during which the defendant will not compete with the plaintiff in selling or training others to sell contact lenses within twenty-five miles of Atlanta. In pertinent part the agreement states:

5. [T]he Employee agrees that for a period of 300 calendar days from date of such termination, within the geographic area hereinafter defined:

(a) Employee will not directly or indirectly engage in any of the activities described in 1(a) and 1(b) above,

and/or

(b) Employee will not directly or indirectly recruit, train, supervise or assist others to engage in any of the activities described in 1(a) and 1(b) above. . . .

7. The Employee agrees that in the event Employer is required to resort to court action to enforce its rights hereunder, the foregoing restrictive time period shall be extended for a period of 300 calendar days from the date of any final order of the court enforcing this Agreement.

The activities described in paragraph one are:

(a) To contact opticians, optometrists and ophthalmologists, hereinafter called "practitioners," for the purpose of selling to them contact lenses and related products and services, and

(b) To provide and offer to provide to Practitioners assistance, advice and consultation with respect to contact lenses and related products and services, and

Georgia law provides that contracts in restraint of trade or tending to lessen competition are against public policy and are therefore void. Ga.Const. (1945) Art. IV, Section IV, Par. 1; Ga.Code Ann. § 20–504 (1968). Covenants against competition in employment contracts are considered in partial restraint of trade. They are to be tolerated only if "strictly limited in time and territorial effect and [are] otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." *McNease v. National Motor Club*, 238 Ga. 53, 55, 231 S.E.2d 58, 60, (1976); *Accord, Kroger Properties, Inc. v. Adams-Cates Co.*, 247 Ga. 68, 274 S.E.2d 329 (1981); *Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284, 285, 227 S.E.2d 251, 252 (1976). The reasonableness of the restraints is a question of law for determination by the court. *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 261 S.E.2d 572 (1979); *McNease v. National Motor Club*, 238 Ga. 53, 231 S.E.2d 58 (1976); *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, 224 Ga. 160, 160 S.E.2d 356 (1968).

The requirement of "otherwise reasonable" is frequently interpreted as an inquiry into the scope of activities prohibited. *E.g., Puritan/Churchill Chemical Co. v. Eubank*, 245 Ga. 334, 265 S.E.2d 16 (1980); *Southeastern Beveridge & Ice Equipment Co. v. Dillard*, 233 Ga. 346, 211 S.E.2d 299 (1974). While that inquiry is a relevant one, the requirement of "otherwise reasonable" includes more. The rule of reason is the overarching standard to be applied in all cases involving covenants not to compete. *See Durham v. Stand-By Labor of Georgia, Inc.*, 230 Ga. 558, 561, 198 S.E.2d

145, 148 (1973). The meaning of reasonableness in this context was set forth in the seminal case of *Rakestraw v. Lanier*, 104 Ga. 188, 195, 30 S.E. 735 (1898):

> If considered with reference to the situation, business and objects of the parties, and in light of all the surrounding circumstances ... the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them, and not specially injurious to the public, the restraint will be held valid.

■ *The Territorial Limitation*: By its very terms—the city of Atlanta and the area within 25 miles from its limits—the territorial limitation of the non-competition covenant is precise and strictly limited. Both parties acknowledged that Atlanta is the "heart" of the plaintiff's territory. The defendant's sales territory was considerably larger than the small zone restricted in the contract. The plaintiff limited the restriction as much as it could while still protecting its own legitimate business interests. Thus, the restriction is reasonable. *Landmark Financial Services, Inc. v. Tarpley*, 236 Ga. 568, 224 S.E.2d 736 (1976).

■ *The Scope of Activities Restricted*: The scope of activities restricted is also precise and strictly limited. The scope of activities restricted will be found reasonable when there is a rational relationship between those activities and the activities the employee conducted for his former employer. The relationship between activities during employment and activities prohibited is interpreted with reference to the individual situation. *Rakestraw v. Lanier*, 104 Ga. 188, 195, 30 S.E. 735. *See generally* 8 Ga.L.Rev. 527, 529 (1974).

Prior to 1974, when such a rational relationship was found, covenants were approved even when the nature of the activities restricted was described in the broad language of serving a competitor "in any capacity." *E. g., Shirk v. Loftis Brothers*, 148 Ga. 500, 97 S.E. 66 (1918). Since the decision in *Federated Mutual Insurance Co. v. Whitaker*, 232 Ga. 811, 209 S.E.2d 161 (1974) the Georgia courts have consistently invalidated covenants using the broad "in any capacity" language. *See, e. g., Hudgins & Co. v. Cole*, 247 Ga. 182, 274 S.E.2d 462 (1981); *Ponders, Inc. v. Norman*, 246 Ga. 647, 272 S.E.2d 345 (1980).

Defendant's argument that the language of the covenant in the instant case has the effect, either on its face, or as interpreted by the plaintiff, of the prohibited "in any capacity" language is without merit. In particular, the defendant objects that in preventing supervision of other salesmen, the scope of the restriction is broader than the defendant's activities while in the plaintiff's employ.

■ The Georgia courts have not required that the scope of activities restricted be limited to the identical activities an employee engaged in for his former employer. *See, e. g., Edwards v. Howe Richardson Scale Co.*, 237 Ga. 818, 229 S.E.2d 651 (1976) (mechanic did not buy or sell for former employer, covenant prohibiting purchases and sales upheld); *Landmark Financial Services, Inc. v. Tarpley*, 236 Ga. 586, 224 S.E.2d 736 (1976) (office manager prohibited from engaging in employer's line of business); *cf. Puritan/Churchill Chemical Co. v. Eubank*, 245 Ga. 334, 265 S.E.2d 16 (1980) (salesman prohibited from owning or managing too broad); *Browning v. Orr*, 242 Ga. 380, 249 S.E.2d 65 (1978) (salesman prohibited from manufacture too broad). Such a blanket rule would be at odds with the general requirements of reasonableness and protection of the employer's legitimate interests.

Plaintiff provided the defendant with training and customer lists that were essential to his success and his value as a contact lens salesman. The plaintiff's efforts merit protection. *Edwards v. Howe Richardson Scale Co.*, 237 Ga. 818, 229 S.E.2d 651 (1976); *Durham v. Stand-By Labor Inc.*, 230 Ga. 558, 198 S.E.2d 145 (1973); *Mike Bajalia, Inc. v. Pike*, 226 Ga. 131, 172 S.E.2d 676 (1970). If allowed to work as a supervisor, recruiter, trainer, or assistant of his new employer's salesmen, the defendant may

use his prior training and established customer contacts to his new employer's undeserved benefit and his old employer's detriment just as easily as he could as a salesman himself. Therefore, the restriction on scope of activities is rationally related to the activities of the defendant with his former employer. The defendant is "not prohibited from working for a competitor in any capacity or in an area unrelated to the field of expertise ... gained at [the employer's] expense." *Barry v. Stanco Communications Products, Inc.*, 243 Ga. 68, 71, 252 S.E.2d 491, 494 (1979). *Accord, Edwards v. Howe Richardson Scale Co.*, 237 Ga. 818, 821, 229 S.E.2d 651, 653 (1976).

■ *The Duration of the Restrictions*: The duration of the restrictions imposed by the covenant is not sufficiently precise or limited to meet the test of reasonableness.

The plaintiff has two purported interests in restricting its former salesmen from working for its competitors. The first interest, related to the non-disclosure covenant but having an independent basis in the non-competition covenant, is to limit use of the confidential business information which its employees have, and would inevitably employ in a new job. *See Howard Schultz & Associates v. Broniec*, 239 Ga. 181, 187–88, 236 S.E.2d 265, 269 (1977). After the passage of time this information will grow stale.

The second interest is in achieving a breathing period to train the former employee's replacement. Plaintiff's director of sales testified that it took a minimum of one year for a new sales representative to become reasonably effective in his territory. During this period the plaintiff has an interest in training the former employee's replacement, without the special pressures on the trainee that would be created by the competition of the former employee soliciting his old accounts on behalf of his new employer. *See Merrill Lynch, Pierce, Fenner & Smith v. Stidham*, 506 F.Supp. 1182 (M.D.Ga.1981).

In the ordinary course of events, and despite the director of sales testimony that at a minimum, one year was necessary to train an effective replacement, the plaintiff asked for only a 300 day period of non-competition from its former employees. This period of time is certainly reasonable in light of the plaintiff's legitimate business interests.

However, paragraph seven, the contingency of litigation clause, provides restrictions of the former employee which go far beyond the plaintiff's legitimate business interests. Neither the parties nor the court could locate a Georgia case dealing directly with the acceptable limits of a contingency of litigation clause in employment contracts. Nonetheless, in light of the discussion of time limits generally, by analogy to discussions of territorial and scope of activity and in view of the general requirement of reasonableness, the contingency of litigation clause in this case is vague and unreasonable.

Since contingency of litigation clauses are a new wrinkle in the Georgia law on restrictive employment covenants, it is worthwhile to review the rationale for inclusion of contingency of litigation clauses before assessing the particular merits of the clause here.

■ Under Georgia law, the pendency of litigation over a non-competition covenant does not toll the running of the non-competition period called for in an employment contract. *Coffee System of Atlanta v. Fox*, 227 Ga. 602, 182 S.E.2d 109 (1971). Absent a contingency of litigation clause, the 300 day period of non-competition in the instant contract would end on February 4, 1982.

Therefore, on the one hand, given the ordinary time requirements to bring a case to trial, if there is no contingency clause or a preliminary injunction is not granted the plaintiff will never have an opportunity to restrain the defendant before the 300 day period expires. *See, e. g., Coffee System of Atlanta v. Fox*, 227 Ga. 602, 182 S.E.2d 109 (trial court properly refused to enter injunction because restrictive period had passed during pendency of litigation). *Nasco, Inc. v. Gimbert*, 239 Ga. 675, 238 S.E.2d 368 (1977) (period of restriction over by time of final appeal).

On the other hand, if a preliminary injunction issues, or there is an unbounded contingency clause, the defendant faces an analogous problem. In such a situation, even if the defendant ultimately prevails on the merits, he may have been kept from working in his preferred business and location for a period of time far in excess of that contemplated by the original employment agreement, absent an unpredictable period of litigation. *E. g., Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284, 227 S.E.2d 251 (1976) (employee enjoined for two years, covenant declared void two years and six weeks later). Although contingency of litigation clauses are normally inserted by an employer and for its benefit, the contingency of litigation clause must be evaluated in light of its effect on both aspects of the timing problem. *Rakestraw v. Lanier*, 104 Ga. 188, 195, 30 S.E. 735 (1898).

The timing considerations described above are obviously crucial to determination of the injury, hardship and public interest of the second, third and fourth prerequisite elements for a preliminary injunction. Because duration of a non-competition agreement is a criteria of the agreements substantive validity, these timing considerations also become determinative of the first prerequisite element, the likelihood of success on the merits.

The plaintiff cites *Coffee System of Atlanta v. Fox*, 227 Ga. 602, 182 S.E.2d 109 (1971) as giving general support to its contingency of litigation clause. In *Coffee System* after refusing to enjoin an employee from violating his non-competition clause because the contractual period of restriction was consumed by litigation, the court said, "... the litigation did not toll the ... period so as to provide additional time for [an injunction after litigation]. The contingency of litigation could have been provided for in the agreement, but was not." 227 Ga. at 602, 182 S.E.2d at 110.

The court in *Coffee System* implied its approval of a tolling provision, not a penalty provision, in the event of litigation. The court believes that if the employer wishes to avoid the result reached in *Coffee System*, it should include a contingency of litigation clause that tolls the running of the restrictive period during the pendency of any litigation or, alternatively, during any time the employee works in a job later found to be in violation of the employee's non-competition agreement. If the employee does not work, either because of a court order, or on his own initiative, the clock will run on the restrictive time period.[1]

Such a tolling provision is predictable and protects the legitimate interests of the employer: If the employee works at a competing job, the employer will eventually have his full period of non-competition, even though it may occur after litigation, instead of immediately after the employee leaves his job.[2] The employee knows the maximum total number of days he will be restricted.

Admittedly, such a tolling clause is subject to a charge of vagueness, in the sense that any tolling provision makes the expiration date of a defined period of time contingent upon the factors that will activate the tolling provision. But if the Georgia courts will not tolerate this amount of vagueness, then contrary to *Coffee System*, no tolling provision could ever be acceptable. The vagueness is an inescapable part of a time consuming and deliberative system of judicial dispute resolution.

---

1. There are no time restrictions which are *per se* unreasonable under Georgia law. *Johnson v. Lee*, 243 Ga. 864, 866, 257 S.E.2d 273, 275 (1979). The court does not mean that a tolling provision of this type is the only contingency clause which could pass muster. But in this case, the contrast between a tolling provision, sanctioned by *Coffee System*, and the clause employed, illustrates the latter's unreasonableness.

2. Because it could shift when the non-competition occurs, a tolling provision may encroach somewhat on the former employer's interest in having a breathing period for training a replacement. But, if the covenant is eventually upheld, the now trained replacement will eventually have an opportunity to work while the new employer is disabled by the activation of the non-competition period.

The contingency of litigation clause employed by the plaintiff in this case is vague and unreasonable.

The restriction is vague, because it provides that the period of restriction shall be extended "300 calendar days from the date of any final order" of the court enforcing the contract. There is no way to predict either when an employee signs the contract or leaves the plaintiff's employ, how long he would be kept from working in his preferred line of work in a particular territory if this provision were upheld and made effective by grant of a preliminary injunction. Plaintiff maintains that "final order" means not an appealable order, but the last order in the litigation, including appeals. Litigation over the covenant could continue for years. Plaintiff's purported interests in a restrictive covenant do not justify such a lengthy period of restriction.

The provision is unreasonable because if this provision were upheld, an employer could unilaterally extend the restrictive period simply by bringing an action seeking enforcement of this covenant.

Plaintiff advances two arguments in support of the covenant: First, the covenant states the length of the restriction to be precisely 300 days. If the employee *honors* his contractual obligation, the restriction expires on the three-hundredth day and cannot be revived (emphasis added).

Second, the contingency is not unreasonable because the clause comes into operation if and only if the employee violates the covenant. Since the covenant is phrased if "the . . . Employer is *required* to resort to court. . ." (emphasis added), the employer can only effect an extension of the 300 day period unless and until the court finds the employee has violated the covenant.[3]

The plaintiff's arguments do not go far enough with their own logic. First, an employee has the right to take a job which presents a close case for enforcement of the covenant, even if he and his former employer hold contrary views about the legality of the new job. In such a case, a court will decide whether the employee is in a competing job. An employee also has a right to appeal an adverse ruling of a lower court on the meaning of the covenant. He should not be characterized as dishonorable, or punished with a restriction far in excess of that which he would face if he conceded close cases to his employer, or gave up his right to appeal adverse lower court judgments. Thus, the 300 day limit is precise, but contrary to plaintiff's assertion, it may be extended even when the contract is honored. Such would be the case if a preliminary injunction were granted now, and more than 300 days from now the defendant prevails on the merits.

Second, if the covenant merely contemplated a 300 day period of non-competition, even if that period would come after a final order in litigation determining that defendant violated his agreement, than there is no need for a preliminary injunction before such a final order.

■■■ Georgia has rejected the blue-pencil theory of severability. If a contract contains illegal and unenforceable clauses within a restrictive covenant, the entire covenant must fall. *Kroger Properties, Inc. v. Adams Cates Co.*, 247 Ga. 68, 274 S.E.2d 329 (1981); *McNease v. National Motor Club*, 238 Ga. 53, 231 S.E.2d 58 (1976); *Rita Personnel Services v. Kot*, 229 Ga. 314, 191 S.E.2d 79 (1972). On motions for preliminary injunction, Georgia courts will invalidate contracts void on their face. *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 261 S.E.2d 572 (1979). Since the duration of the restrictive period is rendered

---

**3.** The covenant calls for extension of the 300 day period into 300 days plus litigation, if litigation arises. At the hearing plaintiff adopted this literal view (tr. at 195) of the covenant. In briefs, plaintiff took a different view. The concession in briefs that the period will not extend past litigation if the plaintiff does not prevail goes without saying. The court understands the argument in the latest brief to be that the 300 day period will be extended only in the sense that it begins to run, effective with the end of litigation if plaintiff wins. (Supplemental brief p. 4). Thus, the plaintiff is attempting to minimize the clause's punitive effects. As explained, the effort does not go far enough.

unreasonable by virtue of the contingency of litigation clause, the entire non-competition covenant is void. There is no opportunity for plaintiff to succeed on the merits.

## THE NON–DISCLOSURE COVENANT

In *Durham v. Stand-By Labor, Inc.*, 230 Ga. 558, 198 S.E.2d 145 (1973) the Georgia Supreme Court held that a claim for breach of a non-disclosure covenant could be maintained separately from a claim for breach of a non-competition covenant, whether they were under the same or distinct provisions of the employment agreement. *See also, Harrison v. Sarah Coventry, Inc.*, 228 Ga. 169, 184 S.E.2d 448 (1971); *Water Services, Inc. v. Tesco Chemicals, Inc.*, 410 F.2d 163, 171 (5th Cir. 1969); *Aladdin v. Krasnoff*, 214 Ga. 519, 105 S.E.2d 730 (1958).

In pertinent part, the nondisclosure covenant in the instant contract provides:

5. The Employee further agrees that he will not, during the term of his employment or at any time thereafter, without written approval of the Employer, disclose or cause to be disclosed any technical information, financial data, sales data, customer information or customer lists, acquired during the term of employment. Employee further covenants and agrees that all drawings, photographs, graphs, tables and charts, whether originals or reproductions, produced during the term of employment by himself or others, are and shall be the sole property of the Employer, and the Employee agrees not to disclose nor cause to be disclosed the contents to others without the written approval of the Employer, except as may be necessary in the regular course of the Employer's business and the duties of the Employee.

■ Plaintiff does not claim that the information which it sought to protect here rises to the level of trade secrets. Ordinarily, non-specialized customer lists and other confidential business and customer information not rising to trade secret status are not within the purview of traditional Georgia law as to property and are not protectable from post-employment disclosure in the ab-sence of contract. *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, 224 Ga. 160, 160 S.E.2d 356 (1968); *Durham v. Stand-By Labor, Inc.*, 230 Ga. 558, 198 S.E.2d 145 (1973).

■ The exception to this general rule is when such information was procured by improper means or otherwise disclosed without privilege, as in violation of relations of confidence. *Durham v. Stand-By Labor, Inc.*, 230 Ga. 558, 198 S.E.2d 145 (1973). Thus, a court will intervene to protect confidential business information when "persons, who, in the capacity of attorneys, agents and in other confidential relations, have obtained the custody to the books and documents of their principals, or have come into possession of secrets relating to their affairs..." *Stein v. National Life Association*, 105 Ga. 821, 826, 32 S.E. 615 (1898).

■ Furthermore, when a duty has been imposed upon an employee pursuant to contract not to disclose confidential business information upon termination of employment, public policy is swung in favor of protecting these commercial intangibles and of preventing unfair methods of exploiting them in breach of duty. *Durham v. Stand-By Labor, Inc.*, 230 Ga. 558, 198 S.E.2d 145 (1973); *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.*, 224 Ga. 160, 160 S.E.2d 356 (1968). *See also, Developments in the Law-Competitive Torts*, 77 Harv.L. Rev. 888, 947 (1964). Thus, to assess the plaintiff's likelihood of success on the merits, the court must inquire into whether the non-disclosure covenant appears valid, and if it is not, whether this might be a case of a specialized customer list or confidential relationship, justifying an injunction in the absence of contract.

■ Non-disclosure covenants are judged under the two pronged test set out in *Durham v. Stand-By Labor, Inc.*, 230 Ga. 558, 564, 198 S.E.2d 145, 149–150 (1973):

(1) whether the employer is attempting to protect confidential information relating to the business, such as ... methods of operation, names of customers, personnel data, and so on—even though the

information does not rise to the stature of a trade secret; and

(2) whether the restraint is reasonably related to the protection of the information.

 The *Durham* court pointed out factors to be taken into consideration in determining whether a protectable interest, under the first prong, is involved in a particular case. We need not analyze those factors here, however, because the covenant does not meet the requirements of the second prong.

The *Durham* court, while discarding the territorial requirement applicable to non-competition covenants, made clear that the reasonableness of non-disclosure covenants turns on factors of time and the nature of the business for which protection is sought. 230 Ga. at 563, 198 S.E.2d at 149.

The covenant in the instant case is unlimited in its duration. Such covenants are consistently found to be unreasonable under Georgia decisions since *Durham. See, e. g., Howard Schultz & Associates v. Broniec,* 239 Ga. 181, 188, 236 S.E.2d 265, (1977); *Thomas v. Best Mfg. Co.,* 234 Ga. 787, 788, 218 S.E.2d 68, (1975). The non-disclosure covenant is void on its face, and the plaintiff cannot succeed on the merits of this claim on a contractual basis.

The existence of a specialized customer list or a confidential relationship that would justify an injunction in the absence of a contract provision is a question of fact. *See Durham v. Stand-By Labor, Inc.,* 230 Ga. 558, 198 S.E.2d 145 (1973). Neither party presented evidence or cited any cases relating to the circumstances under which such a list or relationship will be found. Obviously, the mere showing of an employment relationship between plaintiff and defendant, coupled with defendant's inevitable knowledge of his customer's names and his method of doing business is not enough. Such a standard would convert every salesman's employment situation into one meriting protection by the courts, even in the absence of contract. Since the burden of proof on a preliminary injunction is on the movant, the court must hold that, in the absence of evidence, the plaintiff has failed to show a likelihood of success on the merits on this issue. This determination is, of course, without prejudice to the plaintiff's right to demonstrate the requisite specialized list or confidential relationship at a hearing on permanent injunctive relief.

## APPROPRIATION OF PROPERTY

The plaintiff's property was returned to the plaintiff, or thrown out by the defendant, by the time of the preliminary injunction hearing. Accordingly, the request for an injunction ordering the return of the plaintiff's property is now moot. Courts will not enjoin completed acts. *Coffee System of Atlanta v. Fox,* 227 Ga. 602, 182 S.E.2d 109 (1971).

For the reasons stated, plaintiff's motion for preliminary injunction is DENIED on all counts.