27138. RICHARD P. RITA PERSONNEL SERVICES INTERNATIONAL, INC. v. KOT.

GUNTER, Justice. Covenants not to compete have been in the English and American courts for the last 500 years. This appeal involves such a covenant, contained in a franchise agreement between the appellant-franchisor, Rita, and the appellee-franchisee, Kot.

The franchise agreement has been terminated, and Kot began operating a personnel employment service under his own name. Rita brought an action below to enjoin Kot from operating his personnel employment service in Fulton, Cobb and DeKalb Counties, contending that he was prohibited from doing so by the covenant not to compete with Rita contained in the franchise agreement previously executed by both parties.

Kot responded by contending that the covenant not to compete contained in the franchise agreement was overly broad with respect to the geographical area in which he was restricted from operating a personnel employment service, and the covenant was therefore illegal, void, and unenforceable.

The trial court agreed with Kot that the covenant was unenforceable, and a temporary injunction applied for by Rita to stop Kot from operating was denied. Rita has appealed, contending that the covenant is enforceable, and contends here that the trial court committed error in not granting its requested temporary injunction.

The covenant contained in the franchise agreement was, succinctly and plainly stated and with much legalistic language deleted, as follows: Kot agreed with Rita that for a period of two years after the termination of the franchise ageement that he would not compete with Rita in Fulton, Cobb and DeKalb Counties (Georgia) or any territorial areas in which a franchise has been granted by Rita.

Kot contends that the covenant is overly broad with respect to the restricted territorial area because of the words "or in any territorial area in which a franchise has been granted by Rita" contained in the covenant. He concedes that had those words been left out of the covenant, the covenant would have been valid, and he could not now compete in Fulton, Cobb and DeKalb Counties. However, he says that since the entire covenant is overly broad, the entire covenant is illegal, and he therefore can compete with Rita wherever he wants to.

Rita seeks to enforce only that part of the covenant applicable to the three counties and says that the Georgia courts should adopt the "blue-pencil theory of severability," cast out the words "or in any territorial area in which a franchise has been granted by Rita," and uphold and enforce what remains in the covenant after this partial obliteration by the court.

We are thus called upon for the first time to apply the "blue-pencil theory of severability" to a geographical area of restriction as distinguished from the "activities" or "products" type of restriction contained in a covenant. Rita contends that the latter type of judicial surgery was applied in *Hood v. Legg,* 160 Ga. 620 (128 SE 891) (1925), and with that case for a precedent this court

should judicially cut off the larger geographical area in this covenant, leave the three county area in this covenant, and enforce it as severed.

The Constitution of this State (*Code Ann.* § 2-2701) says: "All contracts and agreements which may have the effect, or be intended to have the effect, to defeat or lessen competition, or to encourage monopoly, shall be illegal and void. The General Assembly of this State shall have no power to authorize any such contract or agreement."

In *WAKE Broadcasters v. Crawford,* 215 Ga. 862 (114 SE2d 26) (1960) this court had under consideration the enforceability of a covenant which restricted competition "within a radius of fifty (50) miles of the City of Atlanta, Fulton County, Georgia, or within a fifty (50) mile radius of any city in which the Bartell Group now or shall during the term of this agreement, own or operate a radio broadcasting station or television broadcasting station." That covenant was held unenforceable, because the area described therein was unreasonable.

In *Taylor Freezer Sales Co. v. Sweden Freezer &c. Corp.,* 224 Ga. 160 (160 SE2d 356) (1968) the restricted area contained in the covenant was "in any area in which Sweden Freezer products may be distributed or sold at the time of such termination [of the contract]." This court held that covenant in general restraint of trade and unenforceable.

In *Ellison v. Labor Pool of America,* 228 Ga. 147 (184 SE2d 572) (1971) two restrictions as to area were involved. The first was as follows: "Within the city of Fort Lauderdale, Fla., and within an area of fifty (50) miles in all directions from the city limits thereof. In any city including an area of fifty (50) miles in all directions from the city limits thereof, in any city in which a franchise or branch office of employer is being operated at the time this employment is terminated." The second restricted area was: "Within an area of fifty (50) miles in all directions of the outer boundaries of the City of Chicago, Illinois.

Within a radius of twenty-five (25) miles in all directions from the outer boundaries of any city in which a franchise or affiliated company of employer is being operated at the time this employment is terminated."

In *Ellison* this court held that the restricted areas described in both covenants were indefinite as to territory, and the covenants could not be enforced.

In view of these three cases, the restrictive covenant in the case at bar, when read in its entirety, is unenforceable in Georgia, and Rita should have known that the entire covenant would be unenforceable in Georgia.

Now, if the covenant as read in its entirety is unenforceable, should we adopt the "Blue-pencil theory of severability," sever that part of the covenant which makes the entire covenant unenforceable, and then hold that what remains after severance is enforceable?

We have given careful consideration to the severance theory, and we decline to apply it.

Professor Harlan M. Blake in 73 Harv. L. Rev. 625 (February 1960) had this to say: "Courts and writers have engaged in hot debate over whether severance should ever be applied to an employee restraint. The argument against doing so is persuasive. For every covenant that finds its way to court, there are thousands which exercise an in terrorem effect on employees who respect their contractual obligations and on competitors who fear legal complications if they employ a covenantor, or who are anxious to maintain gentlemanly relations with their competitors. Thus, the mobility of untold numbers of employees is restricted by the intimidation of restrictions whose severity no court would sanction. If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too."

There are some good reasons in support of the doctrine of severance. However, we conclude that those reasons are

not of sufficient weight to offset those reasons for refusing to apply the doctrine. In short, we have weighed the "blue-pencil" doctrine in the balance, and found it wanting.

The judgment of the court below was correct.

*Judgment affirmed. All the Justices concur, except Mobley, C..J., Grice, P. J., and Jordan, J., who dissent.*

ARGUED APRIL 12, 1972—DECIDED JUNE 28, 1972—
REHEARING DENIED JULY 12, 1972.

*Alston, Miller & Gaines, Oscar N. Persons, W. Terence Walsh,* for appellant.

*J. V. Skinner,* for appellee.

JORDAN, Justice, dissenting. It appears to me that the majority opinion prefers to rely upon what Professor Blake said in 73 Harvard Law Review rather than the clear logic and reasoning in the binding precedent of this court in *Hood v. Legg,* 160 Ga. 620 (128 SE 891). In my opinion, the court in that case clearly applied the "blue-pencil" doctrine as stated in Headnote 4 when it said: "The contract between the parties purported to restrict the covenantors, not only from manufacturing and selling brick within the stipulated territory, but also from manufacturing and selling 'other clay products.' The auditor found that the contract 'with reference to other clay products' was unreasonable and invalid. No exception was filed to this finding. The defendant in error in the cross-bill of exceptions contends that the contract is indivisible, and that since this portion is invalid the whole contract falls. Held, that the contract is divisible, and the finding that the portion with 'reference to other clay products' is unenforceable does not affect the validity of the contract with reference to the manufacture and sale of brick."

As Justice Gilbert, speaking for the court in that case, said, "It would appear, therefore, that it was not so much the effect of the three-hundred-mile radius that the defendants sought to avoid, as it was to avoid in toto their obligation not to compete." P. 634.

So it is under the facts of the case sub judice we are not concerned with the broad territorial limits of the contract but merely whether the defendant should have been allowed to compete in the restricted three-county area. There can be no question but that the language "or in any territorial area a franchise has been granted by Rita" is overly broad and would not be enforced against the defendant were he attempting to compete in any area outside the specifically stated three-county area.

The contract here contains a severability clause and this court should not declare the entire agreement to be illegal merely because one part of the agreement is overly broad with regard to geographic limits. The only portion of the noncompetition clause which the plaintiff seeks to enforce is that covered by the three-county area. It is conceded that such a territorial restriction is valid. To carry out the true intention of the parties, this portion of the agreement, being clear and unequivocal, should be enforced. The additional language "or in any territorial area in which a franchise has been granted by Rita" is clearly repugnant to Georgia law and could not be enforced. Such language should be severed, as the agreement provides, and the valid portion enforced. That was what was done by this court in *Hood v. Legg,* 160 Ga. 620, supra. Justice and fair play requires us to do it here. See *Aladdin, Inc. v. Krasnoff,* 214 Ga. 519 (105 SE2d 730) and *Kessler v. Puritan Chemical Co.,* 213 Ga. 845 (102 SE2d 495) where this doctrine has been recently applied by this court.

I am authorized to state that Chief Justice Mobley and Presiding Justice Grice concur in this dissent.