## 32122. HOWARD SCHULTZ & ASSOCIATES OF THE SOUTHEAST, INC. v. BRONIEC.

HILL, Justice.

This case involves a covenant not to compete and a covenant against disclosure of confidential information. In *Rita Personnel Services v. Kot,* 229 Ga. 314 (191 SE2d 79) (1972), this court was called upon to adopt or reject the "blue-pencil theory of severability" as to a covenant not to compete. In deciding that issue, the court was called upon to decide whether covenants not to compete should or should not be favored, and it was decided that they should not be favored. Thus the "blue-pencil" case, as *Rita Personnel* is known here, is somewhat of a landmark in this area of Georgia law and as such may even represent a turning point. In this case we are asked to overrule *Rita Personnel* if the restriction on competition is found to be overly broad.

At the outset it is necessary to determine whether the contract under consideration here is to be treated for these covenant purposes as an employment agreement in view of the fact that it expressly declares that it creates only the relationship of independent contractor and not that of master and servant. *Rita Personnel,* supra, involved a franchise agreement which was treated as an employment agreement. We find that the agreement here under review

is to be treated similarly. Having made this determination, the parties can be identified by use of the traditional labels of "employer" and "employee."

An employer sought an injunction to enforce a covenant not to compete contained in an employment agreement and to restrain the former employee from divulging confidential and privileged information received by him during his employment. After hearing evidence and argument the trial court dismissed the complaint. The employer appeals.

On November 20, 1972, Frank D. Broniec (employee) entered into an agreement with Edward C. Aubitz by which the employee was to audit the accounts of clients of Aubitz and his principal, Howard Schultz and Associates, Inc., to determine if the clients had overpaid accounts payable because they were unaware of the availability of special discounts or allowances. The agreement contained a restrictive covenant whereby employee "will not, for a period of two years after the termination of this agreement, for any reason thereafter, engage, directly or indirectly, as principal, agent, employer, employee, or in any capacity whatsoever, in any business, activity, auditing practice, or any other related activities, in competition with the principal [Howard Schultz & Associates] or associate's [Aubitz] business within any area or areas from time to time constituting the principal's or associate's area of activity in the conduct of their respective businesses, as of the date of said termination. . ."

The agreement also contained a paragraph concerned with confidential and privileged information which stated that employee "shall receive information and knowledge with reference to clients, customers, and other sources of income of the principal and the associate, and with reference to auditing techniques, forms, standards, and other practices of the principal and the associate in performing the services in which the principal and the associate are engaged, and that all of said knowledge and information is confidential and privileged, and . . . [employee] agrees to keep said information confidential and not reveal the same to any party. . ."

The agreement concluded by stating that "this

agreement shall bind both parties hereto, their heirs, administrators, successors, and assigns."

At various times in 1974 and 1975, Aubitz assigned the agreement to Wisner, Wisner assigned it to Barker and Barker assigned it to the plaintiff-employer. The employee did not consent by written acknowledgment to any of these transfers. The employee terminated his employment in March 1976.

In October 1976, Howard Schultz & Associates of the Southeast (employer) filed a complaint seeking to enjoin the employee from engaging in activities in violation of the agreement. After a hearing the trial court ruled that the provisions of the contract are unenforceable.

1. By both constitutional and legislative provision, Georgia prohibits contracts or agreements in general restraint of trade. Const. 1976, Art. III, Sec. VIII, Par. VIII (Code Ann. § 2-1409); Code Ann. § 20-504. Georgia courts have consistently held that the prohibition does not impose an absolute bar against every kind of restrictive agreement. A covenant not to compete ancillary to an employment contract is enforceable only where it is strictly limited in time and territorial effect and is otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee. *Edwards v. Howe Richardson Scale Co.,* 237 Ga. 818, 820 (229 SE2d 651) (1976); *Orkin Exterminating Co. v. Pelfrey,* 237 Ga. 284 (227 SE2d 251) (1976).

Insofar as territorial restrictions are concerned, some of them relate to the territory in which the employee was employed; others relate to the territory in which the employer does business. The former generally will be enforced. *Edwards v. Howe Richardson Scale Co.,* supra; *Dixie Bearings, Inc. v. Walker,* 219 Ga. 353, 356 (133 SE2d 338) (1963). The latter generally are unenforceable absent a showing by the employer of the legitimate business interests sought to be protected. *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.,* 224 Ga. 160 (160 SE2d 356) (1968); *Ellison v. Labor Pool of America, Inc.,* 228 Ga. 147 (184 SE2d 572) (1971); *Durham v. Stand-By Labor,* 230 Ga. 558 (1) (198 SE2d 145) (1973). It appears that the justification for this difference in treatment is that a court will accept as prima facie valid a covenant related to the

territory where the employee was employed as a legitimate protection of the employer's investment in customer relations and good will. Thus a court will enforce an agreement prohibiting an employee from pirating his former employer's customers served by the employee, during the employment, at the employer's direct or indirect expense. Conversely, a court will not accept as prima facie valid a covenant related to the territory where the employer does business where the only justification is that the employer wants to avoid competition by the employee in that area.

In the case before us the employee was prohibited from engaging in competition within "any area or areas from time to time constituting the principal's or associate's area of activity in the conduct of their respective businesses, as of the date of said termination." This area would be, as to the employer's territory, not to mention the principal's territory, Alabama, Georgia, Florida, North Carolina, South Carolina and Tennessee. The employer has not justified this territorial restriction. It therefore stands as a bald attempt by the employer to prevent competition by the employee and is unenforceable.

2. This covenant not to compete must fall for two more reasons. This court has held on several occasions that a covenant wherein the employee agreed not to accept employment with a competitor "in any capacity" imposes a greater limitation upon the employee than is necessary for the protection of the employer and therefore is unenforceable. *Dunn v. Frank Miller Associates,* 237 Ga. 266 (227 SE2d 243) (1976); *Federated Mut. Ins. Co. v. Whitaker,* 232 Ga. 811 (209 SE2d 161) (1974); *Dixie Bearings, Inc. v. Walker,* supra.

A covenant not to compete is also unreasonable where the nature of the business activities in which the employee is forbidden to engage is not specified with particularity. *Dixie Bearings, Inc. v. Walker,* supra; *Southeastern Beverage &c. Co. v. Dillard,* 233 Ga. 346 (211 SE2d 299) (1974), and cases cited. These indefinite business activities generally are identified by reference to the employer's business; e.g., the employee agrees not to engage in or be employed by any "business similar to

employer's business."

The restrictive covenant here prohibits the employee from engaging *"in any capacity* whatsoever, in any business, activity, auditing practice, or in any other related activities, in competition with the principal or associate's business." We find that the covenant is unreasonable because the employee is prohibited from working in any capacity for a competitor. The covenant also fails to specify with any particularity the nature and kind of business which is or will be competitive with the employer; i.e., the covenant fails to specify with particularity the activity which the employee is prohibited from performing.

3. The employer urges us to overrule *Rita Personnel Services v. Kot,* 229 Ga. 314, supra, and adopt the "blue-pencil theory" of severability. In *Rita Personnel* this court considered the severance theory and declined to apply it. The court has consistently followed *Rita Personnel.* See *McNease v. National Motor Club,* 238 Ga. 53 (231 SE2d 58) (1976); *Federated Mut. Ins. Co. v. Whitaker,* supra; *Durham v. Stand-By Labor,* supra.

The employer argues that the Restatement of Contracts, § 518, approves the blue-pencil theory. However, Draft No. 12 of Restatement of the Law, Second, Contracts, § 326, pp. 95-96 (March 1, 1977), approved by the American Law Institute, rejects the blue-pencil theory as contrary to the weight of recent authority. *Rita Personnel* is cited with approval.

The employer cites three Georgia cases, all decided before *Rita Personnel,* and urges that in those cases this court applied the blue-pencil theory. *Hood v. Legg,* 160 Ga. 620 (128 SE 891) (1925), involved the sale of a business rather than an employment contract and therefore the policy reasons for opposing the adoption of severability may be different. In any event we are not called upon in this case to adopt or reject the blue-pencil theory as to covenants involved in the sale of a business.

*Aladdin v. Krasnoff,* 214 Ga. 519 (105 SE2d 730) (1958), is distinguishable. There two covenants within an employment contract were involved — one which prohibited the employee for two years from engaging in the ownership or operation of a janitor supply business in

the greater Atlanta area, and the other which prohibited the employee from disclosing to anyone at any time the name or address of any or all *past,* present or *potential* customers. In *Aladdin* the court struck the customer nondisclosure covenant but upheld the separate and distinct covenant not to compete. In *Aladdin* the blue-pencil theory was used to excise one type of covenant to save a different type of covenant. Compare *Durham v. Stand-By Labor,* supra. Here the employer urges severance within a single covenant.

*Kessler v. Puritan Chemical Co.,* 213 Ga. 845 (102 SE2d 495) (1958), is, as the employer contends, inconsistent with *Rita Personnel,* and was implicitly overruled by *Rita.*

According to the contract before us the employee agreed that for a period of two years he would not engage, directly or indirectly, as principal, agent, employer, employee, or in any capacity whatsoever, in any business, activity, auditing practice, or any other related activity, in competition with the employer in Alabama, Georgia, Florida, North Carolina, South Carolina and Tennessee, or in competition with employer's principal wherever it may operate. The employer requests us to restrict the territory, to strike the offensive words "in any capacity" and to add words of our choosing to specify the activity forbidden to the employee.

It is these very requests which are the reason for rejecting severability of employee covenants not to compete. Employers covenant for more than is necessary, hope their employees will thereby be deterred from competing, and rely on the courts to rewrite the agreements so as to make them enforceable if their employees do compete. When courts adopt severability of covenants not to compete, employee competition will be deterred even more than it is at present by these overly broad covenants against competition. We choose to reaffirm *Rita Personnel Services v. Kot,* supra.

4. We next must consider whether the trial court erred in not issuing an injunction with reference to the employee's covenant against disclosure of confidential information. In *Durham v. Stand-By Labor, Inc.,* supra, we made it clear that a nondisclosure covenant in an

employment agreement could be enforced independently from a claim under a covenant not to compete such as has been discussed above. See also *Aladdin v. Krasnoff,* supra.

Also, at the outset, it is important to note that here the employer does not have a "trade secret" such as can be protected by law absent a contract provision. *Stein v. National Life Assn.,* 105 Ga. 821, 825 (32 SE 615) (1899); *Outside Carpets, Inc. v. Industrial Rug Co., Inc.,* 228 Ga. 263, 268 (185 SE2d 65) (1971). "A trade secret, within the rules pertaining to the rights which can be protected by injunction, is a plan, process, tool, mechanism, or compound, known only to its owner and those of his employees to whom it must be confided in order to apply it to the uses intended." *Vendo Co. v. Long,* 213 Ga. 774, 776-777 (102 SE2d 173) (1958); *Taylor Freezer Sales Co. v. Sweden Freezer Eastern Corp.,* 224 Ga. 160, 164 (160 SE2d 356) (1968); *Thomas v. Best Mfg. Corp.,* 234 Ga. 787, 789 (218 SE2d 68) (1975). The employer contends that the employee learned from Aubitz and thereafter from confidential newsletters the names of vendors who allowed discounts not shown on their invoices and the names of vendors whose discounts were misleading and hence subject to erroneous computation.[1] Each of these vendors knew that it allowed correctly computed discounts. The "secret" here was merely a compilation of this otherwise nonconfidential albeit uncollected information. We do not find that this compilation of information amounts to a trade secret. Therefore, in order to enjoin the employee from disclosing this information the employer must rely on the nondisclosure covenant.

In *Durham v. Stand-By Labor,* 230 Ga. 558, supra, at 563, the court noted the similarity between covenants not to compete and nondisclosure agreements and said that the reasonableness of nondisclosure covenants ". . . turns on factors of time and the nature of the business interest

---

[1] We do not decide in this case whether the description in the covenant of the information not to be disclosed is sufficiently definite to be enforceable, and we do not decide whether the "vendors list" described above is within that description.

sought to be protected."

In *Thomas v. Best Mfg. Corp.,* 234 Ga. 787, 788, supra, this court held a nondisclosure covenant to be unreasonable because, among other reasons, it lacked any time limitation and hence purported to be effective in perpetuity.

The nondisclosure covenant here contains no time limitation and hence it is unenforceable. *Durham,* supra; *Thomas,* supra. Note, 8 Ga. L. Rev. 527, 536 (1974). The trial court therefore did not err in failing to issue an injunction.

*Judgment affirmed. All the Justices concur, except Jordan, J., who dissents.*

ARGUED MARCH 21, 1977 — DECIDED JUNE 8, 1977.

*Westmoreland, Hall, McGee & Warner, John L. Westmoreland, Jr., P. Joseph McGee,* for appellant.

*Nagle & Johnston, Howard H. Johnston,* for appellee.

*Berman, Fichtner & Mitchell, Harold B. Berman,* amicus curiae.