Larry Gordon MOORE, Appellant,

v.

CURTIS 1000, INC., Appellee.

No. 80–1854.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1980.

Decided Feb. 25, 1981.

Charles C. Shafer, Jr., Kansas City, Mo., for appellant.

Arlyn D. Haxton, Joe B. Whisler, Foster C. Collins, Dietrich, Davis, Dicus, Rowlands & Schmitt, Kansas City, Mo., for appellee.

Before HEANEY, ROSS and McMILLIAN, Circuit Judges.

ROSS, Circuit Judge.

Larry Moore appeals the granting of a preliminary injunction in favor of defendant Curtis 1000, Inc. The appellant was employed as a sales representative by the appellee from 1975 until July 1, 1979.[1] During his employment, Mr. Moore entered into employment contracts containing restrictive covenants against competition. While employed by Curtis 1000, Inc., appellant sold business paper products in a territory which included parts of Kansas City and surrounding areas. After December 1979, appellant joined with others and formed a business for the purpose of distributing business paper products in the Kansas City area.

In March 1980, Larry Moore filed suit in federal district court seeking a declaratory judgment regarding the employment contracts and seeking damages for slander, tortious interference with business relations and other alleged injuries. Curtis 1000, Inc. then counterclaimed against Mr. Moore seeking damages for breach of contract and a preliminary injunction.

The final employment contract executed by the parties and the contract relevant for our purposes was dated March 24, 1977. A supplemental agreement describing Mr. Moore's sales territory was executed May 17, 1977, and attached to the March 24, 1977 contract.

The restrictive covenant contained in the March 24, 1977 contract provided:

(d) In consideration of the valuable business of the Company in the attached territory and the time and expense incurred by the Company in training the Sales Representative, and recognizing the highly competitive nature of the Company's business, the Sales Representative hereby expressly covenants and agrees, which covenants and agreements are of the essence of this contract, that he will not, during the term of this Agreement or for a period of two years immediately following the termination thereof, for any reason whatsoever, directly or indirectly, for himself or as principal, agent, partner, joint venturer, stockholder, officer, director, advisor, or employer:

(i) Solicit, or provide assistance to another in the taking or soliciting of, orders for printing, envelopes, or other products marketed by the Company in any territory in which he has solicited business for the Company, or from anyone from whom he has solicited such business, during the two years immediately preceding the termination of this Agreement.

(ii) Call upon any customer or customers of the Company, for the purpose of selling or soliciting the sale of products marketed by the Company, in any territory in which the Sales Representative has solicited business for the Company, during the two years immediately preceding the termination of this Agreement.

(iii) Solicit orders for printing, envelopes, or other products marketed by the Company or perform any other duty for which employed by the Company, whether as Sales Representative, Sales Supervisor, or District Sales Manager, in any town or city in which such duties were performed during the two years preceding the termination of this Agreement.

The contract also stated that its terms and provisions should be construed under Georgia law.

This court has recently adopted, en banc, a test for determining whether a preliminary injunction should issue. In *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc) this court set forth the following factors to be used in

---

1. Moore worked for Curtis 1000, Inc. from July 1979 until December 1979 as a sales manager in California. However, it appears undisputed that the employment contracts in question only relate to Moore's work as a sales representative.

determining whether the injunction should issue:

> (1) the threat of irreparable harm to the [movant]; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [movant] will succeed on the merits; and (4) the public interest.

The district court[2] found that after his termination, Mr. Moore attempted to solicit business from customers of Curtis 1000, Inc. located within his former territory. *Moore v. Curtis 1000, Inc.*, No. 80–0268–CV–W–3 (W.D.Mo. Aug. 21, 1980). The district court then held that because of the difficulty of regaining customers once lost and the difficulty of determining damages suffered by reason of such loss, Mr. Moore's solicitation of customers in his previous territory would cause irreparable damage to Curtis 1000, Inc. The district court also found that Mr. Moore was not restricted from soliciting customers outside of his former territory and thus would suffer no undue hardship if the contract was enforced. For reasons hereinafter set forth, we disagree with this conclusion.

Appellant's main contention of error involves the district court's findings that Curtis 1000, Inc. had shown a probability of success on the merits. Mr. Moore claimed that the restrictive covenants would not be enforceable under Georgia law.

The decision to grant or deny a preliminary injunction will be disturbed on appeal "only if the trial court abused its discretion or based its decision on an erroneous legal premise." *F. T. C. v. National Tea Co.*, 603 F.2d 694, 696 (8th Cir. 1979).

*Georgia Law.*

■ In *Coffee System of Atlanta v. Fox*, 226 Ga. 593, 176 S.E.2d 71 (1970), the Supreme Court of Georgia stated that they have "customarily considered three separate elements" in determining the reasonableness of restrictive covenants in employment contracts. The three elements are "(1) the restraint in the activity of the employee, or former employee, imposed by the contract; (2) the territorial or geographic restraint; and (3) the length of time during which the covenant seeks to impose the restraint." *Id.* at 74.

■ When considering the territorial restrictions placed on an employee, the Georgia courts have indicated that territorial restrictions will generally be enforced when they relate to the area in which the employee worked but restrictions which relate to the entire area in which the employer does business are generally unenforceable. *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 236 S.E.2d 265, 267–68 (1977).

■ Our research of Georgia law also shows that the Georgia courts have continually "rejected the 'blue-pencil theory of severability' as applied to restrictive covenants in employment contracts. *Howard Schultz & Assoc. v. Broniec, supra,* [reaffirming] *Rita Personnel Services v. Kot*, 229 Ga. 314, 191 S.E.2d 79 (1972). Therefore, if any of the sub-paragraphs of the restrictive covenant are invalid, the entire covenant must fall."[3] *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 261 S.E.2d 572, 575 (1979). *See also Redmond v. Royal Ford, Inc.*, 244 Ga. 711, 261 S.E.2d 585, 588 (1979); *T. V. Tempo, Inc. v. T. V. Venture, Inc.*, 244 Ga. 776, 262 S.E.2d 54, 56 (1979).

Due to Georgia's rejection of the "blue-pencil theory of severability," it seems clear that any evaluation of the likelihood of success in enforcing this employment contract must be done through evaluation of *all* the clauses of the restrictive covenant.

In this case Curtis 1000's motion for a preliminary injunction sought enforcement

---

**2.** The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

**3.** The contract in this case contained a severability clause, however, the Georgia courts have refused to apply the "blue-pencil" theory of severability even with the presence of such clauses in the contract. See *Uni-Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 261 S.E.2d 572 (1979); *Purcell v. Joyner*, 231 Ga. 85, 200 S.E.2d 363 (1973); *Rita Personnel Services v. Kot*, 229 Ga. 314, 191 S.E.2d 79 (1972).

of only subparagraphs (i) and (ii) contained in the restrictive covenant, clause 6(d). Subparagraphs (i) and (ii) directly related to the former territory in which Mr. Moore worked and are, therefore, prima facie valid under *Howard Schultz & Assoc. v. Broniec, supra.* However, Curtis 1000's motion ignored subparagraph (iii) of the restrictive covenant which provides:

> (iii) Solicit orders for printing, envelopes, or other products marketed by the Company or perform any other duty for which employed by the Company, whether as Sales Representative, Sales Supervisor, or District Sales Manager, *in any town or city* in which such duties were performed during the two years preceding the termination of this Agreement.

(Emphasis added.)

This subparagraph is, under the facts of this case, extremely broad and not linked to Mr. Moore's former territory. Mr. Moore's former territory included, for example, small portions of downtown Kansas City, Missouri, and North Kansas City and part of Kansas City, Kansas. If subparagraph (iii) was enforced as written, Mr. Moore would be barred from soliciting in *all* of Kansas City, Missouri, North Kansas City and Kansas City, Kansas.

The district court, understandably, considered the motion for a preliminary injunction as it had been framed by Curtis 1000. Curtis 1000 sought enforcement of subparagraphs (i) and (ii) and Mr. Moore's arguments were addressed only to the enforceability of those two subparagraphs. The order issued by the district court, although clarifying the territory formerly assigned to Mr. Moore, essentially enforced subparagraphs (i) and (ii) of the restrictive covenant.

■ Our review of Georgia law leads to the conclusion that the district court applied an erroneous legal premise. First, Georgia requires that *every* subparagraph of the covenant be enforceable before the covenant as *a whole* is found enforceable. Second, subparagraph (iii) extends the territorial restriction of this contract to an area

considerably larger than Mr. Moore's former territory and such restrictions are generally unenforceable under Georgia law. For these reasons, we do not believe Curtis 1000 has shown a probability of success on the merits.

■ Similarly, we find that if subparagraph (iii) is enforced as written, Mr. Moore would suffer substantial injury by being barred from soliciting areas outside his former territory. No doubt Curtis 1000 will also suffer injury if Mr. Moore is allowed to solicit business in his former territory. But, since the covenant is due to expire in a few months, the injury will not be irreparable.

■ As to the public interest the Georgia courts have noted that Georgia prohibits contracts in general restraint of trade by both constitutional and legislative provision. *See Howard Schultz & Assoc. v. Broniec, supra.* And the reluctance of Georgia courts to "blue-pencil" employment contracts is also based on policy considerations. As noted in *Howard Schultz & Assoc. v. Broniec, supra,* 236 S.E.2d at 269:

> It is these very requests [to "blue-pencil" employment contracts] which are the reason for rejecting severability of employee covenants not to compete. Employers covenant for more than is necessary, hope their employees will thereby be deterred from competing, and rely on the courts to rewrite the agreements so as to make them enforceable if their employees do compete. When courts adopt severability of covenants not to compete, employee competition will be deterred even more than it is at present by these overly broad covenants against competition.

Therefore, after considering each of the relevant factors, we hold that the district court's issuance of the preliminary injunction amounted to an abuse of discretion and must be reversed.

■ As to Mr. Moore's other claims involving subparagraphs (i) and (ii) of the restrictive covenant, we note that the contract did not restrict Mr. Moore "from

working for a competitor in any capacity or in an area unrelated to the field of expertise [he] gained at [Curtis 1000's] expense." *Barry v. Stanco Communications Products, Inc.*, 243 Ga. 68, 252 S.E.2d 491, 494 (1979). Mr. Moore also objects to the district court's failure to limit the preliminary injunction to two years as provided by the contract. Both parties have agreed this was an error. While the Georgia courts have upheld two-year limitations, *see Marcoin, Inc. v. Waldron*, 244 Ga. 169, 259 S.E.2d 433, 434 (1979), our disposition of this case makes a remand for the imposition of such a time limitation unnecessary.

We reverse the order granting the preliminary injunction, and remand for further proceedings consistent with the views expressed in this opinion.