## A92A0663. ALW MARKETING CORPORATION et al. v. HILL.
(422 SE2d 9)

BIRDSONG, Presiding Judge.

ALW Marketing Corporation (ALW) and Massachusetts Indemnity & Life Insurance Company (MILICO) appeal the grant of Joe D. Hill's motion to dismiss all counts of appellants' complaint against Hill for breach of certain covenants in an employment contract for violation of the Georgia Trade Secrets Act, OCGA § 10-1-760 et seq., the Uniform Deceptive Trade Practices Act, OCGA § 10-1-371 et seq., and for common law unfair competition, for unjust enrichment, and for conversion.

Hill formerly was a Regional Vice President (RVP) of ALW, which is a sales force of independent contractor agents for the sale of MILICO term life insurance. In connection with his employment, Hill was required to execute three "agreements" spanning 80 pages or more, including supporting or appended documents and certifications of other agents as to the rather complex ALW "hierarchy." However, of these numerous agreements, appellants rely upon only one of them, the "A. L. Williams Agreement for Independent Business of Regional Vice President."

As RVP, Hill supervised and monitored four "down-line" agents and received an overriding commission on all policies sold by these lower level agents. On November 8, 1990, Hill became associated with another insurance agency. Appellants ALW and MILICO alleged Hill retained and used trade secrets and other confidential information acquired from appellants during his association with them, including policy cards, lists of actual or potential policyholders and lists of other members of the ALW sales force; that he gained a great competitive advantage over appellants from this knowledge and use of plaintiffs' trade secrets and confidential information; that he induced or attempted to induce policyholders to terminate or replace their MILICO insurance policies with policies of his new employer or principal; that he pirated or attempted to pirate members of appellants' sales force and induced some to breach their agreements with appellants; that as a result of all these acts by Hill, appellants suffered loss of goodwill and other irreparable harm to their business; that Hill traded unfairly on appellants' goodwill and reputation; that he was unjustly enriched at appellants' expense by replacing MILICO policies and pirating sales agents; and that he converted to his own use appellants' contractual relations and property rights in proprietary information including customer lists.

Enumerations 1-3 concern the dismissal of appellants' complaint as to the covenants alleged violated: a non-replacement covenant, a non-pirating covenant, and a non-disclosure covenant. First, appellants assert that the parties' agreement stipulates that the covenants

are reasonable as to Hill, and the trial court was required to accept this and all other allegations in the complaint as true, with all doubts to be resolved in appellants' favor even though unfavorable constructions are possible, according to the law on motions to dismiss (see *Morgan v. Ga. Vitrified Brick &c. Co.*, 196 Ga. App. 779, 780 (397 SE2d 49)). Second, appellants assert that the trial court could not dispose of the complaint on the basis of the pleadings per OCGA § 9-11-12 as to a motion to dismiss, because it could not determine the validity of post-employment restrictive covenants except by examining the reasonableness of each covenant in " 'the particular factual setting to which it is applied,' " (emphasis deleted) per *National Teen-Ager Co. v. Scarborough*, 254 Ga. 467, 469 (330 SE2d 711). Third, appellants assert that the substantive law on restrictive covenants would uphold the validity of these covenants in this case if appellants were allowed to develop the evidence beyond the pleadings. Appellants rely on the rule that a motion to dismiss may not be granted unless it appears to a certainty that the non-moving party would not be entitled to relief under any set of facts he could prove in support of his claim. *Bourn v. Herring*, 225 Ga. 67, 70 (166 SE2d 89). *Held*:

1. Appellee's motion to dismiss the appeal is denied.

2. The trial court found that the covenants are overbroad and void as a restraint of trade because the RVP could not know under the agreement how long the covenants would last or when they begin. The trial court reasoned that the prohibition of activity as to each covenant is specified to be "at any time during the *term* of this agreement"; and the "term" of the agreement depends upon the "effective date," which is described as "such date as MILICO may designate in a bulletin distributed by it to Agents. . . . Such designation shall be binding upon RVP regardless of whether RVP has or receives actual notice." The trial court concluded that if no notice of a change in the effective date is required to be sent to the RVP, then the "term" can be triggered at any time without notice, which makes it impossible for the RVP to know under the agreement how long covenants will last or when they will start.

We agree with the trial court's conclusion that this provision is uncertain and unreasonable and is a void restraint of trade. Moreover, we find that the prolixity and the uncertainty of the language of the non-replacement covenant, particularly, defeat the entire agreement, being such as to result in differing analyses as to its meaning and significance and such as to result in no very certain meaning in any case.

(a) The reference to a covenant taking effect "during the term of this agreement" appears only in the non-replacement covenant, and for a specified period of time "thereafter," three years. The other two

covenants do not state that they apply "during the term of this agreement," but they apply to the "post-termination period" which is two years as to the anti-pirating covenant, and four years as to the non-disclosure covenant. According to the contract definition of "effective date," all of the covenants are uncertain as to their "effectiveness." The contract defines "term of the agreement" as follows: "The term of this agreement shall begin as of the later of (i) the effective date or (ii) the date of acceptance by the General Agent at its principal office and shall continue until this agreement is terminated in accordance with its terms, provided that this agreement shall remain in force for a period of at least thirty (30) days after date of acceptance by the General Agent. RVP's right to conduct RVP's business of Regional Vice President and all of RVP's authority, privileges, and licenses pursuant to this agreement shall terminate upon termination of this agreement. This agreement shall automatically and without notice terminate upon the death of RVP or upon termination of RVP's Trademark License Agreement with the General Agent."

The trial court correctly concluded that the uncertainty as to the "term of the agreement" renders the non-replacement covenant void. The "term of the agreement" is not necessarily the period of RVP's association with ALW and MILICO; it does not necessarily begin when the RVP began his association with ALW and MILICO, nor end when the association is terminated. It is a variable term, the meaning of which is not certain and not ascertainable at any given time. The "effective date" is uncertain depending on whether ALW issued a "bulletin" of which RVP did not have notice; therefore, the "term of the agreement" is uncertain, and the restriction on replacement of policies for "three years *thereafter*" is uncertain. The applicability of the non-replacement provision three years "thereafter" cannot be inferred to mean "after termination," because it refers to "three years [after the term of the agreement]," which may depend upon an uncertain "effective date" of which the employee/agent may have no notice, or which may change without notice.

In this light, the period of each of the three covenants is uncertain, since they provide for restrictions during the two, three and four years "after termination of this agreement." Since "termination of the agreement" is not necessarily the same thing as "termination of the RVP's employment," it cannot reasonably be determined by the employee or a court at any time whether, and to what extent, any of these provisions applies.

(b) Moreover, the trial court correctly concluded that at least the third contingency in the "non-replacement" covenant is overbroad and incapable of reasonable ascertainment. This provision would forbid replacement of policies to those who, in addition to the two other contingencies, "reside, at the time of the inducement or attempted

inducement, in the geographical area within 50 miles of any office of RVP or any office of any member of RVP's sales hierarchy which office had been the office of RVP or a member of RVP's sales hierarchy at any time during the three (3) year period preceding termination of this agreement if RVP or any member of RVP's sales hierarchy utilized such office for at least a ninety (90) day period." As appellee Hill contends, it is possible that an agent may not know who is in his sales hierarchy at any given time and all times during three years preceding the uncertain "termination of this agreement." Since the "termination of this agreement" cannot reasonably be ascertained, neither can the geographical restrictions be reasonably ascertained; and moreover, the provision does not give reasonable notice to the employee of its limitations during any given time. *Fuller v. Kolb*, 238 Ga. 602, 604 (234 SE2d 517).

(c) Each covenant relied upon by appellants provides: "The running of the post-termination [two-year, three-year, or four-year] period shall be tolled and suspended while RVP is in violation of this covenant." Inasmuch as the "termination of the agreement" referred to in these covenants is not necessarily the same thing as the "termination of the RVP's employment," this "post-termination" period cannot be ascertained or determined at any time; and a provision that such undeterminable period is further tolled while the employee is in violation of the covenant, potentially extends the time of such a covenant perpetually. Such a restriction is overbroad and in restraint of trade. The duration of the applicable period of "violation" is potentially limitless. *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 188 (236 SE2d 265).

3. The assertion in appellants' first enumeration of error is that the covenants are reasonable because Hill agreed that they were reasonable and reasonably necessary. Restrictive covenants in employment contracts are in partial restraint of trade and are enforceable "only if strictly limited in time and territorial effect *and [are] otherwise* reasonable. . . ." (Emphasis supplied.) *Orkin Exterminating Co. v. Pelfrey*, 237 Ga. 284, 285 (227 SE2d 251); see *Guffey v. Shelnut & Assoc.*, 247 Ga. 667, 669 (278 SE2d 371). The question is not merely whether the covenants are reasonable or reasonably necessary, but whether they are enforceable at law. Hill's agreement that the covenants are reasonable does not salvage what is inherently unreasonable, uncertain and unenforceable, as a matter of law to be reasonably determined by courts. See *Orkin Exterminating Co. v. Pelfrey*, supra. The covenants cannot be enforced at least for the reason that their period of application, which depends upon the "term of the agreement," cannot reasonably and with certainty be ascertained, and the employee cannot with any degree of accuracy forecast the extent of the duty owed in terms of time (*Durham v. Stand-By Labor of Ga.,*

230 Ga. 558, 562 (198 SE2d 145)) or territory. *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558 (350 SE2d 425).

4. Adjudged by appellants' second enumeration of error, that the validity of the covenants must be determined in light of the factual circumstances in which they are applied (*National Teen-Ager Co.*, supra), the covenants cannot be determined to be valid because the factual circumstances in which they are applied cannot reasonably be ascertained as to time, term or territory. Proof of additional facts will not affect the inherent variability and uncertainty of these covenants as to time and "term." That is, they are not invalid merely because of a conceivable factual circumstance, but because it cannot be ascertained by the employee at any given time whether and to what extent they apply.

5. Appellants' third enumeration of error, by which they assert that the controlling substantive law would uphold these covenants as reasonable, is without merit, for all the reasons stated heretofore.

The invalidity of these restrictive anti-competition covenants as found herein renders it unnecessary to examine them for additional defects, since these covenants are not severable. *Richard P. Rita Personnel &c. Intl. v. Kot*, 229 Ga. 314 (191 SE2d 79). The trial court did not err in granting appellee's motion to dismiss on these counts.

6. As to appellants' common law or statutory claims, these are not, as appellee contends, based merely on an "implied promise" by appellee which fails when the contract covenants fail. See *Sapp v. Davids*, 176 Ga. 265, 267-268 (168 SE 62), cited by appellee Hill. They are by nature independent of the contract covenants. The trial court failed to state the reasons for its dismissal of these statutory and common law claims, and it appears they are subject not to dismissal on these pleadings, but to proof of actual facts which might give rise to a claim for unfair competition, theft of trade secrets, and conversion of property. Under notice pleadings, the complaint is not required to set out facts upon which the action is based but is sufficient to withstand a motion to dismiss for failure to state a claim when the complaint puts the parties on notice as to the nature of the action in a short and plain statement of the claim. *Dillingham v. Doctors Clinic*, 236 Ga. 302 (223 SE2d 625); Davis & Shulman, Ga. Prac. & Proc. (6th ed.), § 9-5. No reason appears why the common law and statutory complaints should be dismissed on their face. Accordingly, the trial court erred in dismissing Counts IV-VIII.

*Judgment affirmed in part and reversed in part. Beasley and Andrews, JJ., concur.*

## On Motions for Reconsideration.

Appellants ALW Marketing Corporation et al. assert that we ignored the adjurations in *Watson v. Waffle House*, 253 Ga. 671 (324 SE2d 175) and *National Teen-Ager Co. v. Scarborough*, 254 Ga. 467 (330 SE2d 711), that the validity of a covenant not to compete must be determined by "examining the reasonableness of the particular factual setting to which it is applied." *Watson*, supra at 673. Appellants in effect demand a full evidentiary hearing merely by having made the assertion that a covenant is "reasonable"; that is, merely because they filed a lawsuit to enforce it.

This is an assertion that a motion to dismiss or for judgment on the pleadings can never be granted in a case like this and that a plaintiff is always entitled to an evidentiary hearing, even if the covenant is so inherently illogical or self-contradictory or so intrinsically obtuse or indefinite that defendant would have been entitled to a judgment in a case involving any other type of contract. We do not think restrictive covenants, being by nature a restraint on trade, have been elevated to such status in Georgia.

The rule as to motions to dismiss is that a motion to dismiss may be granted if " 'the averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proved in support of the claim.' " *Union Camp Corp. v. Southern Bulk Indus.*, 193 Ga. App. 90 (386 SE2d 866); OCGA § 9-11-12 (b). The statement in *National Teen-Ager Co.* and *Watson* that on motion for judgment on the pleadings a court must accept as true an averment that a non-compete agreement is "reasonable" does not mean the covenant must be accepted as capable of clear ascertainment, definite, and reasonably enforceable. A provision may be reasonable as to "duration, territorial coverage, and scope of activity," but may nevertheless be so flawed and indefinite that it cannot be enforced; these are separate matters. There is no mandate that compels a court to accept as "reasonable" what is inherently illogical or self-contradictory, or is too indefinite to even ascertain what it means or when it applies. Appellants are insisting on an illogical interpretation of the Supreme Court's decisions, so as to litigate the "factual setting" of what cannot be ascertained as a matter of logic and what necessarily must be decided against them on legal grounds.

Secondly, appellants contend we are obligated to construe all allegations in their favor on a motion against them for judgment on the pleadings or to dismiss so that we are required to deny all such motions. Appellants make this assertion even in the face of a holding that the covenants at issue are inherently self-contradictory, indefinite and incapable of ascertainment. In this view a party could compose a set of restrictions which on its face is so cloudy as to be non-

sense and so indefinite as to be plain vexation, and yet still demand an evidentiary hearing because they must be accepted as "reasonable."

Appellee Hill's motion for reconsideration reargues issues already decided and therefore is denied.

*Motions for reconsideration denied.*

DECIDED JULY 9, 1992 —
RECONSIDERATIONS DENIED JULY 27, 1992 — 

*King & Spalding, Frank C. Jones, Michael E. Ross, Leticia D. Alfonso,* for appellants.

*Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom, Page, Scrantom, Harris & Chapman, William G. Scrantom, Jr.,* for appellee.

