**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 10, 2020**

# In the Court of Appeals of Georgia

A19A1824. BELT POWER, LLC et al. v. REED et al.

MILLER, Presiding Judge.

This case presents us with issues of first impression concerning the scope and application of Georgia's recently enacted Restrictive Covenants Act (OCGA § 13-8-50 et seq.). Belt Power, LLC and Shorehill Belt Power, LLC (collectively "Belt Power") seek review of the trial court's final summary judgment order declaring void and unenforceable various restrictive covenants in their contracts with former employees Steve Reed and Jeffrey Harrington and dismissing their counterclaims for breach of those restrictive covenants. Belt Power argues on appeal that (1) the trial court erred when it concluded that the 2014 agreements between the parties completely superseded and replaced their prior 2008 agreements; (2) the trial court erred by applying strict scrutiny to analyze the reasonableness of the restrictive

covenants; (3) the trial court erred by applying Georgia common law instead of the Restrictive Covenants Act; (4) the trial court erred by failing to apply a choice of law provision; and (5) the trial court erred by declining to modify or "blue pencil" the agreement so that it was enforceable.

We determine that the trial court correctly concluded that the 2014 contracts between the parties superseded and replaced their earlier 2008 contracts. We further conclude that Georgia's Restrictive Covenants Act applies to these restrictive covenants and that the trial court did not abuse its discretion in declining to use the Act's "blue pencil" provision to modify the restrictive covenants, and it correctly declined to apply the choice of law provision in the contract. We therefore affirm the trial court's final judgment declaring that the restrictive covenants were unenforceable, and we affirm the trial court's order dismissing Belt Power's counterclaims for breach of those restrictive covenants.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

2

(Citation omitted.) *Crouch v. Bent Tree Community, Inc.*, 310 Ga. App. 319 (713 SE2d 402) (2011).

Belt Power is a company that is primarily engaged in making and distributing conveyor belts and conveyor belt components. Reed and Harrington were employees of Belt Power and were both engaged as territory managers. In 2008, Reed and Harrington each purchased a small minority equity share of Belt Power pursuant to an "LLC Interest Purchase and Restriction Agreement" with Belt Power that each separately signed. This agreement included restrictive covenants providing that, for a certain period after their employment ends, Reed and Harrington would not (1) solicit business from any of Belt Power's customers; (2) compete with Belt Power in any state in which it operates; (3) solicit any of Belt Power's employees to join their business; (4) hire any of Belt Power's employees; or (5) disclose any trade secrets or confidential information.

In 2014, Reed and Harrington each separately sold their minority shares back to the company pursuant to a "Confidentiality, Non-Competition and Non-Solicitation Agreement" with Belt Power that also included certain restrictive covenants. Among other restrictions, the agreement stated that Reed and Harrington would not recruit

3

or hire, or attempt to recruit or hire, any of Belt Power's employees for a period of five years after the sale of their shares.

Reed stopped working for Belt Power in 2015, and Harrington left the company in 2017. In 2017, Harrington and Reed created Sitka Belt, LLC, for the purpose of "marketing and selling industrial belts for conveyors and other applications." Reed and Harrington brought this action for a declaratory judgment that the restrictive covenants contained in the parties' 2008 and 2014 agreements were void, and they asked for a permanent injunction enjoining Belt Power from enforcing the covenants. Belt Power counterclaimed for breach of the restrictive covenants, alleging that Harrington violated the 2008 agreement by soliciting Belt Power's customers and that Reed violated the 2014 agreement by inducing Harrington to leave Belt Power and join Sitka. Reed and Harrington then filed a motion for the entry of a declaratory judgment and a permanent injunction.

Following a hearing, the trial court granted the motion for a declaratory judgment, concluding that the restrictive covenants were void and unenforceable. The trial court also entered a permanent injunction enjoining Belt Power and any other entity from enforcing the restrictive covenants in the parties' agreements, and it

4

dismissed Belt Power's counterclaims for breach of contract. Belt Power then appealed.

1. Belt Power first argues that the trial court erred in concluding that the 2008 agreement (and the restrictive covenants contained therein) was superseded and replaced by the 2014 agreement (and its restrictive covenants). We conclude that the trial court correctly construed the 2014 agreement's merger clause so as to conclude that the 2014 agreement superseded and replaced the 2008 agreement.

> The interpretation of a contract is normally a question of law to be resolved by the court, and the [order] of the lower court in this case [is] therefore subject to de novo review. This review requires us first to decide whether the contract provisions at issue are ambiguous. If there is no ambiguity, then we simply enforce the contract according to its terms.

(Citations omitted.) *Willesen v. Ernest Communications, Inc.*, 323 Ga. App. 457, 459 (1) (746 SE2d 755) (2013).

The 2014 agreement contained a merger clause which stated that the agreement "[set] forth the entire understanding with respect to the subject matter hereof and supersedes any prior or contemporaneous understandings with respect thereto, written or oral." "We conclude that the language of the superseding-agreement clause is clear

5

and unambiguous: the later-entered agreement replaces in their entirety all earlier-entered agreements that concerned a similar subject matter." *MAPEI Corp. v. Prosser*, 328 Ga. App. 81, 86 (4) (761 SE2d 500) (2014).

The differing covenant obligations contained in the two agreements do not create any ambiguity in the application of the merger clause. The 2008 and 2014 agreements clearly concerned similar subject matters: the primary basis for the 2008 agreements was the purchase by Reed and Harrington of minority shares of Belt Power, and the primary basis of the 2014 agreements was the sale of those same shares back to the company. It is entirely logical that the parties would agree to have Reed and Harrington be subject to more stringent covenant obligations once they became partial owners of the company and that such obligations would no longer apply once they ceased to be partial owners. Thus, the trial court correctly concluded that the 2014 agreement superseded the 2008 agreement.

2. Belt Power also argues[1] that the trial court erred in concluding that Georgia's Restrictive Covenants Act did not apply to the employee no-hire and employee no-solicitation covenants in the 2014 agreement and by instead applying Georgia

---

[1] This issue is listed as Belt Power's third enumeration of error, but we will address it second in light of our conclusion.

common law to analyze the enforceability of the covenants. Upon a close reading of the entire statute, we conclude that the restrictive covenants at issue do fall within the ambit of the Act. We nevertheless conclude that the trial court did not abuse its discretion in declining to apply the "blue pencil" provision in the Act to modify the terms of the covenants.

"On appeal, we review the lower court's interpretation of a statute de novo, as statutory interpretation is a question of law." (Citation omitted.) *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). "The fundamental rules of statutory construction require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation and punctuation omitted.) *Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 362 (1) (729 SE2d 378) (2012). "[S]tatutes in derogation of the common law must be limited strictly to the meaning of the language employed, and not extended beyond the plain and explicit terms of the statute." (Citation and punctuation omitted.) Id. at 364 (1). On the other hand, when we interpret a statute, "we do not look at the text in isolation. Rather, to determine its meaning, we also consider its context. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law . . . that forms

7

the legal background of the statutory provision in question." (Citations omitted.) *Plummer v. Plummer*, 305 Ga. 23, 26-27 (2) (823 SE2d 258) (2019).

(a) *The Restrictive Covenants Act Applies to these Restrictive Covenants*

The trial court here first concluded that the Restrictive Covenants Act does not apply to the employee no-hire and employee no-solicitation covenants in the 2014 agreement based upon its review of OCGA § 13-8-53, the main enforcement provision, which does not explicitly mention the covenants at issue in this case. Because we are required to view the statute as a whole, however, we do not end our inquiry at this one provision.

We first turn to the Act's list of definitions. The Act defines the term "restrictive covenant" in part as

> an agreement between two or more parties that exists to protect the first party's or parties' interest in property, confidential information, customer good will, business relationships, *employees*, or any other economic advantages that the second party has obtained for the benefit of the first party or parties, to which the second party has gained access in the course of his or her relationship with the first party or parties, or which the first party or parties has acquired from the second party as the result of a sale.

8

(Emphasis supplied.) OCGA § 13-8-51 (15). We next look at the Act's judicial review provision, which broadly states, "In *any* action concerning enforcement of a restrictive covenant, *a court shall not enforce a restrictive covenant* unless it is in compliance with the provisions of OCGA § 13-8-53. . . ." (Emphases supplied.) OCGA § 13-8-54 (b). Taken together, the clear and plain language of these two provisions compels a conclusion that *any* agreement that meets the Act's definition of restrictive covenant, and is otherwise not excepted from the Act's provisions, is subject to the terms of the Act and must comply with the terms of the Act. Restricting the Act's scope to merely the provisions that are explicitly mentioned in OCGA § 13-8-53 would render meaningless the majority of the broad definition of "restrictive covenant" located in OCGA § 13-8-51 (15), which contains many more types of agreements.

Finally, we readily conclude that the employee no-hire and employee no-solicitation covenants at issue are clearly "agreement[s] . . . to protect [Belt Power]'s interest in . . . employees" and thus fall within the Act's definition of "restrictive covenants." See OCGA § 13-8-51 (15). As a result, we conclude that the two provisions at issue fall within the scope of the Restrictive Covenants Act, and the enforceability of those covenants should be analyzed under the provisions of the Act.

9

(b) *The Trial Court Did Not Abuse its Discretion in Declining to Apply the*

*"Blue Pencil" Provision*

In addition to concluding that the covenants were unreasonable and unenforceable under Georgia common law, the trial court made the alternative holding that, even if the Restrictive Covenants Act applied, the provisions were facially unreasonable and overly broad under the Act, and it also concluded that it would not exercise its discretion to modify the covenants under the Act's "blue pencil" provision. Belt Power does not argue in its appellate brief that the covenants should have been considered reasonable under the Restrictive Covenants Act. Instead, Belt Power argues that the trial court erred by failing to use the "blue pencil" provision of the Act to modify the covenants so as to make them enforceable. We conclude that the trial court did not abuse its discretion in declining to modify the covenants.

This Court has not yet interpreted the Act's covenant modification provision.[2]

The Restrictive Covenants Act provides that

> if a court finds that a contractually specified restraint does not comply
> with the provisions of [this Act], then the court may modify the restraint
> provision and grant only the relief necessary to protect such interest or
> interests and to achieve the original intent of the contracting parties to
> the extent possible.

OCGA § 13-8-54 (b). See also OCGA § 13-8-53 (d) ("[A] court may modify a
covenant that is otherwise void and unenforceable so long as the modification does
not render the covenant more restrictive with regard to the employee than as
originally drafted by the parties.").

---

[2] We note that the Act's blue pencil provision is clearly its most significant departure from our prior common law framework. Under our prior precedent, the ability to modify unreasonable covenants was frowned upon and was only allowed in very limited circumstances. See *Carson v. Obor Holding Co., LLC*, 318 Ga. App. 645, 649 n.8 (1) (734 SE2d 477) (2012) (noting the few, limited instances the Supreme Court has sanctioned the use of blue-penciling restrictive covenants); see also *Richard P. Rita Personnel Svcs. Intl., Inc. v. Kot*, 229 Ga. 314, 317 (191 SE2d 79) (1972) (noting the fear that if courts were allowed to modify unreasonable restrictive covenants, "employers [could] fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too.").

We first note that each of these two provisions directs that a court "*may*" modify a covenant if it determines that the covenant is unreasonable. "The word 'may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." *United States v. Rodgers*, 461 U. S. 677, 706 (IV) (B) (103 SCt 2132, 76 LE2d 236) (1983). Upon a close reading of this provision, however, we see no indications that the "may" in these provisions indicates that applying these provisions is mandatory, and so we can come to no other conclusion than that it is within a trial court's discretion whether or not to apply the Act's blue pencil provisions.

We will therefore analyze the trial court's decision under the abuse of discretion standard. Normally, "[a] trial court abuses its discretion when the exercise of discretion was infected by a significant legal error or a clear error as to a material factual finding." *Rockdale Hospital, LLC v. Evans*, 306 Ga. 847, 851 (2) (b) (834 SE2d 77) (2019). In its order, the trial court explicitly considered Belt Power's legitimate business interests and concluded that they did not warrant a modification of the covenants so as to make them enforceable. See OCGA § 13-8-54 (a) ("A court

12

shall construe a restrictive covenant to comport with the reasonable intent and expectations of the parties to the covenant and in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement."). Viewing the facts and circumstances in this case in their totality, we conclude that the trial court did not abuse its discretion when it declined to use the Act's blue pencil provision to modify the covenants to make them enforceable.[3]

3. Belt Power further argues that the trial court erred in refusing to enforce a choice of law provision in the 2014 agreement and by applying Georgia law rather than Delaware law. "Forum selections clauses are prima facie valid and should be enforced unless the opposing party shows that such enforcement would be unreasonable under the circumstances." (Citation omitted.) *Bunker Hill Intl., Ltd. v. Nationsbuilder Ins. Svcs., Inc.*, 309 Ga. App. 503, 506 (710 SE2d 662) (2011). It has, however, long been Georgia law that choice of law provisions will not be enforced if application of the clause would "contravene[] a strong public policy" of this State.

---

[3] In light of our ruling, we need not address Belt Power's second and fifth enumerations of error, to the extent they were not otherwise addressed by our ruling, because they concern the trial court's application of Georgia common law. We also note that the employee non-hire and non-solicitation covenants are the only ones at issue in this litigation, and we do not address whether the blue pencil provision may or should be used to sever these covenants from the remainder of the contract.

13

Id. (Citation and punctuation omitted.) Before the enactment of the Restrictive Covenants Act, we held that restrictive covenants in restraint of trade (such as the ones at issue here) fall within this public policy exception if (1) at least one of the restrictive covenants violates Georgia public policy and (2) such a covenant would likely be enforced by the other state's court. Id. at 507. The Restrictive Covenants Act does not change our prior conclusion that unreasonable restrictive covenants are against Georgia public policy. See OCGA § 13-8-54 (b) ("[A] court *shall not* enforce a restrictive covenant unless it is in compliance with the provisions of [this Act].") (emphasis supplied). Compare OCGA § 13-8-50 ("The General Assembly finds that *reasonable* covenants contained in employment and commercial contracts serve the legitimate purpose of protecting legitimate business interests and creating an environment that is favorable to attracting commercial enterprises to Georgia and keeping existing businesses within the state.") (emphasis supplied). Accordingly, the trial court did not err in refusing to apply the choice of law provision.

In sum, the trial court correctly ruled that the 2014 agreement superseded the 2008 agreement. The trial court also did not abuse its discretion in declining to modify the contract under the blue pencil provision of the Restrictive Covenants Act, and it did not err by applying Georgia law. We therefore affirm the trial court's entry

14

of a declaratory judgment declaring that the restrictive covenants were unenforceable, and we affirm the trial court's order dismissing Belt Power's counterclaims for breach of those restrictive covenants.

*Judgment affirmed. Reese, J., concurs. Rickman, J., concurs in Divisions 1 and 2 and in judgment only in Division 3.\**

**\*DIVISION 3 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2(a).**